UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **TRIDENT ENTERPRISES, LTD., et al,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **Counter-Defendant;** ) | |
| ) | Civil Action No.  1:09-cv-1355 |
| v. ) | CMH/TCB |
| ) | |
| **AIRTRONIC USA, INC.** ) | |
| ) | |
| **Defendant,** ) | |
| **Counter-Plaintiff.** ) | |

**REBUTTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**Introduction**

With regard to the motion to dismiss Brian Fauci ("Fauci") and Monty Mendenhall ("Mendenhall") for lack of personal jurisdiction, certain facts are clear and undisputed.  Fauci lives in upper state New York and Mendenhall lives in western North Carolina and Florida. Neither of them came to Virginia at any time for any reason in connection with Trident.  They never solicited any business in Virginia at any time for any reason.  Neither of them has an office in Virginia. They own no real property in Virginia.  In short, they have no "contacts" in Virginia.

Trident Enterprises, is a North Carolina corporation and has no office in Virginia. Trident has three shareholders: Fauci, Mendenhall and Samuel Hillenburg ("Hillenburg"). Hillenburg lived in North Carolina when Trident was incorporated in 2003 and moved to Arlington, Virginia in November of 2005.  Despite filing an opposition with twenty pages and many pages of exhibits, the only contact that Airtronic even alleges that Fauci and/or Mendenhall had with Virginia is that they sent emails to Hillenburg while he was in Virginia. While this is true, as a matter of law, this is insufficient under the Constitution and the Virginia

Long Arm statute to permit a federal or state court in Virginia to exercise personal jurisdiction over them. The fact that Hillenburg now lives in Virginia is a random and fortuitous fact and not relevant for jurisdiction. If that were not the case then every officer or employee of a corporation that sends an email into any state in United States (which happens almost every second of every day) would be subject to personal jurisdiction in every state in United States where the email lands. But that is not the law. The case law on this point will be reviewed later in this brief.

Accordingly, given this clear law, ordinarily for a motion to dismiss for lack of personal jurisdiction, it would not be necessary to get into a full discussion of the facts of the case in this reply memorandum. However, because of the opposition filed by Airtronic, it is necessary here. Airtronic did not want to discuss the law in its brief on this key jurisdictional point because it is clear the law is all against it. Rather it chose to appear to discuss the facts of this case but in doing so, totally misrepresented the facts and misrepresented what this case is about. Accordingly, a full Declaration by Samuel W. Hillenburg is attached setting forth the facts and the below statement of facts comes from that Declaration (Exhibit 1 hereto). This factual statement is necessary to "set the record straight." Thereafter a discussion of the law will follow which makes it clear that this Motion to Dismiss should be granted.

**Facts**

Hillenburg, the president of Trident, grew up in a family of gunsmiths and was always interested in guns. He was trained on them in the Army and did a great deal of private study in weapons design. In the early 1990s he became aware of a very unique, experimental weapon that was used by the Navy SEALs in Vietnam in the 1960s -- a four shot pump action grenade launcher.

Brian Fauci was a personal friend and a fellow weapons enthusiast who was also a licensed gunsmith and a machinist who could manufacture guns. He lives in Holley, New York. Beginning in approximately 1991 the two of them worked together to get information to be able to recreate this historic gun. In 2003 Mr. Fauci built a replica of this historical gun for himself and displayed the gun at a gun show at Knob Creek, Kentucky. As a result considerable interest was generated in this historical gun with numerous historical collectors expressing an interest in acquiring one of the replicas for their collections.

Accordingly, Mr. Hillenburg and Mr. Fauci decided to form a corporation to develop the gun further. Hillenburg asked Mendenhall, also a friend and gun enthusiast, if he would join them in the venture and provide the necessary capital to fund the corporation. He agreed. Mendenhall is a retired United Airlines pilot who lives in Thomasville, North Carolina and McAlpin, Florida. He agreed to contribute $50,000 to fund the corporation.

They formed the corporation in 2003 in North Carolina and under the laws of North Carolina. Hillenburg is the president and secretary; Fauci is the vice president; and Mendenhall the treasurer. They each own 1/3 of the shares of stock of Trident. They agreed that Hillenburg and Fauci would contribute "sweat equity." Hillenburg was to manage the business and Fauci was to build the guns.

The $50,000 was more than sufficient for their purposes. They were only planning on making a small number of the guns for gun enthusiasts like themselves. They did not have employees. The plan was that Mr. Fauci would work on manufacturing guns as his schedule permitted. He worked full time as a machinist so he could only commit so much time to this after work commitments.

In 2005 Hillenburg contacted Airtronic in Illinois and requested it to manufacture the barrels for their guns.  From the middle of 2005 until May of 2007 Airtronic worked on the barrels.  While Hillenburg, Fauci and Mendenhall were disappointed that Airtronic took this long just to make the barrels, as Trident was not in a hurry to make its historical guns, it did not really matter.

On May 10, 2007 Bob Walter ("Walter"), president of Airtronic, e-mailed Hillenburg and asked if Airtronic could license the rights to manufacture and sell the guns.  The Airtronic proposal was to do something entirely different than what Trident was formed to do.  Walter proposed that it would improve and update the design for reliability and manufacturability and modern military requirements, and Airtronic would bring the work of Trident into the military marketplace.

While Trident was reproducing a historical replica of a unique but imperfect design used by the SEALs in Vietnam, Airtronic promised to use their engineering knowledge and experience as the prime grenade launcher manufacturer to the US military to improve and modernize the gun and sell it in the military marketplace.  Airtronic represented that it was willing to make the capital commitment to do this.  This was an entirely different venture than what Trident was formed to do but, since Airtronic was an existing weapons manufacturer with substantial sales of single shot grenade launchers to the United States government and was willing to make the capital commitment to undertake this commercial venture, Trident decided to let Airtronic go forward.

Trident accepted and on June 21, 2007 Trident entered into the contract with Airtronic that is the subject of this lawsuit.  Pursuant thereto Airtronic acquired the right to manufacture and sell the grenade launcher and was obligated to pay a royalty to Trident for each sale.  Over

the next two plus years Airtronic invested over a million dollars in making changes to the Trident historical gun in order to commercialize it but never made any sales so far as Trident knows. While Airtronic paid Trident the initial $50,000 it agreed to pay, Airtronic never sold any guns and therefore never paid Trident any royalties.

Beginning in May 2009 Airtronic began a series of negotiations seeking to alter its contract with Trident seeking full ownership of the Intellectual Property and the termination or significant reduction of the royalty agreement. Trident refused.

On October 22, 2009 Airtronic terminated the contract but refused to return to Trident the Confidential Information about the guns, as required by the contract, including the multiple prototypes of the gun, both those provided initially by Trident and those manufactured by Airtronic with the use of Trident's Confidential Information. Instead, Airtronic tried to retain this for itself. Trident filed this litigation as a result of that wrongful conduct by Airtronic.

That is the essence of what this case is about.

It is necessary to respond to a few other factual misstatements made by Airtronic in its opposition to the Motion to Dismiss. Airtronic challenges the legitimacy of Trident as a corporation. There is absolutely no merit in this challenge. It is purely an effort by Airtronic to try to direct the attention in the case away from its wrongdoing.

Trident is a North Carolina corporation. While Airtronic claims Trident did not hold annual meetings, that is not the fact. It held an informal annual meeting each year with most meetings occurring at the Knob Creek semi-annual shoots. They would meet there and would talk and review the activities that have taken place. Hillenburg as corporate secretary maintained a corporate minute book reflecting those meetings. (A true copy is attached hereto as Exhibit 1A.) While it is true Mr. Fauci in his deposition indicated he did not know these were

the yearly corporate meetings and did not know Hillenburg, the corporate secretary, kept minutes of these meetings, he recalled the meetings.

In order to try to support its claim for personal jurisdiction over Fauci and Mendenhall, Airtronic claims Trident has an office in Arlington, Virginia. This also is not accurate. The official corporate location for Trident has always been in North Carolina. Trident does not have an office in Arlington, Virginia or anywhere else.

In the Spring of 2010 Hillenburg learned Trident had not made the necessary corporate filings in North Carolina,the annual report to the Secretary of State. Apparently the notices from the North Carolina Secretary of State had been sent to his old North Carolina address and he did not receive them. (*See* exhibit 1 to Airtronic's opposition and the notices from State of North Carolina, Department of the Secretary of the State.) When Hillenburg learned that the proper forms had not been filed, he promptly corrected that situation and they were then filed. *See* Exhibit 1C hereto. While Airtronic pointed out in its brief that for a time Trident was delinquent in these reports, Airtronic failed to note this delinquency was cured and Trident remains in good standing in North Carolina. *See* Exhibit 1D.

These are the facts. All of this is set forth in Hillenburg's Declaration, Exhibit 1 attached hereto.

Let us now turn to a review of the relevant law.

**Argument**

I.  **The Court Lacks Personal Jurisdiction Over Messrs. Fauci and Mendenhall As Neither Has the Requisite Minimum Contacts With the Commonwealth.**

The claims against Mr. Fauci and Mr. Mendenhall should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. The Due Process Clause limits the authority of courts to exercise jurisdiction over foreign defendants by requiring that defendants have "certain

minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  An essential criterion in all cases is whether the quality and nature of the defendant's activity is such that it is reasonable and fair to require him to conduct his defense in [the forum] State." *Orchard Mgmt. Co. v. Soto*, 463 S.E.2d 839, 843 (Va. 1995).

Counter-Defendants Fauci and Mendenhall do not have the minimum contacts with the Commonwealth of Virginia.  Airtronic alleges that these emails by Fauci and Hillenburg constitute a "persistent course of conduct" directed toward Virginia.  Airtronic cites *Blue Ridge Bank v. Veribanc*, 755 F. 2d 371 (4th Cir. 1985).  But a review of *Blue Ridge* reveals the facts and holding are far different than what Airtronic suggests.  In *Blue Ridge*, jurisdiction was sought over Veribanc, a Massachusetts corporation that analyzed financial information on banks and issued reports on the banks.  It sent a report to Dan Dorfman on the Blue Ridge Bank which appeared in the Richmond Times Dispatch and defamed Blue Ridge.  Veribank asked Dorfman to include its name and location in his article.  In addition the Court noted that Veribanc had received fifty-seven orders from Virginia residents over a seventeen month period.  From this the Court concluded Veribanc had engaged in a persistent course of conduct in Virginia.

The Dorfman article was defamatory.  The Court noted that

> By requiring Dorman to reveal his source of financial information Veribanc obviously expected to receive additional orders from customers who read the information in the article. Because of this expectation Veribanc could reasonably expect to be hailed into court, on an allegation of false information supplied to Dorfman by Veribank, in any forum in which Dorfman's article appeared.
>
> The Dorfman article, giving credit to Veribanc also could be considered a solicitation by Veribanc of business in Virginia.

*Id.* at 374.

7

The Court further noted that

> Another factor which favors the exercise of jurisdiction over Veribanc is the interest of Virginia in the action. Blue Ridge is a local bank, and the brunt of the alleged injuries to Blue Ridge occurred in Virginia.

*Id.*

Accordingly, the facts and holding of *Blue Ridge* are far different than the Airtronic claim.

In *Blue Ridge* the commercial solicitation activity of Veribanc was directed at Virginia residents; the defamation occurred in Virginia and a Virginia resident was damaged by the tortious activity. To the contrary the activity of Fauci and Mendenhall in sending emails to Hillenburg in Virginia were random and fortuitous. This distinction was made clear by Judge Trenga in the recent case of *Rosario v. Wands*, 2009 U.S. Dist. LEXIS 84992 (E.D. Va.) (Exhibit 2 hereto).

In *Rosario*, a Virginia resident Rosario sued Wands, a New York resident who was a self proclaimed psychic alleging fraud. Rosario established a professional relationship with Wands while Rosario lived in New York. This then continued after Rosario moved to Virginia. To seek to establish personal jurisdiction in Virginia Rosario claimed that Wands "conducted regular continuous and systemic business in Virginia for seven years." Rosario alleged Wands maintained a website that was accessible in Virginia and that for seven years there were quarterly telephone discussions and they communicated by email.

The Court held these were insufficient to permit the exercise of jurisdiction "Generally, '[m]ere telephonic, facsimile and written communications in furtherance of a transaction are not sufficient contacts to form a basis for personal jurisdiction.'" The Court stated:

> Here, as in *Stover* and *Maur,* Mr. Wands has contacts with Virginia only because his client lives there, an arguably random and fortuitous fact, brought about by Dr. Rosario herself after she

8

>established her relationship with Mr. Wands in New York and entirely unrelated to the substance or purpose of their relationship.

*Id.* at *15.

The same result follows here. Fauci and Mendenhall emailed Hillenburg when he lived in North Carolina up until November 2005 when he moved to Virginia. After Hillenburg moved to Virginia Fauci and Mendenhall continued to email him. That Hillenburg was in Virginia was a random and fortuitous fact. No commercial activity was directed toward Virginia or Virginia residents. Airtronic is located in Illinois. When Trident first contacted Airtronic in 2005, Trident was located in North Carolina.

While the Counter-Defendants' "relationship with each other may be significant in evaluating their ties to the forum . . . the requirements of *International Shoe*, however, must be met as to each defendant" over whom this Court exercises jurisdiction. *Rush v. Savchuk*, 444 U.S. 320, 332 (U.S. 1980).

Neither Mr. Fauci nor Mr. Mendenhall could have reasonably foreseen that they would be subject to the jurisdiction of this Court. Trident is a North Carolina corporation. Mr. Fauci lives in New York and Mr. Mendenhall lives in North Carolina and Florida. Their only contact with the forum is through Mr. Hillenburg via e-mail communication. Courts consistently hold that "mere electronic communications in furtherance of a transaction are insufficient to form a basis for personal jurisdiction." *Consulting Eng'rs, Inc. v. Geometric Software Solutions*, No. 1:06cv956, 2007 U.S. Dist. LEXIS 25150, at *15 (E.D. Va. Apr. 3, 2007) (internal citations omitted). These e-mails are not the type of contacts that would satisfy due process. In *Micropicture Int'l, Inc. v. Kickartz*, the plaintiff, much like Airtronic, argued Virginia's long-arm statute conferred jurisdiction over the two defendant shareholders arguing they engaged in a persistent course of conduct in Virginia by transmitting electronic mail and written

correspondence to the company's president in Virginia.  No. 3:05cv00034 2006 U.S. Dist. LEXIS 3714, at *6-7 (W.D. Va. Jan. 17, 2006).  The court disagreed and granted the motion to dismiss for lack of personal jurisdiction, noting that the communications the defendants had with an individual in Virginia were merely for the sake of convenience, and "not to establish or maintain any type of ongoing Virginia presence." *Id.* at *9, *10 ("In no sense did Defendants engage in a 'course of conduct' aimed at the Commonwealth.").  The communications that Messrs. Fauci and Mendenhall had with Mr. Hillenburg were of the same nature.  If such attenuated contacts are sufficient for personal jurisdiction purposes, then *Int'l Shoe* and its progeny are no longer of any value.  Maintenance of this suit against Messrs. Fauci and Mendenhall would certainly offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 136 (1945) (internal citations and quotations omitted).

In analyzing the personal contacts of Messrs. Fauci and Mendenhall with Virginia, the facts are simple.  They do not live in Virginia; they do not work in Virginia; they never came to Virginia for any reason whatsoever in connection with Trident or Airtronic; they have no office in Virginia; they have not solicited any business here; and Airtronic has not alleged, stated or even suggested that they did any act in Virginia or directed at Virginia that in any way gave rise to the counterclaims that Airtronic is asserting.  The only fact that Airtronic identifies is that Fauci and Mendenhall are officers of Trident and sent e-mails to Hillenburg, the third officer of Trident, who lived in Virginia.  Fauci and Mendenhall emailed him when he lived in North Carolina and continued to do so when he moved to Virginia.  This does not even come close to the "minimum contacts" necessary to meet either Due Process or the Virginia long arm statute.

**II.     Counts I, II, and III Should Be Dismissed Under Rule 12(b)(6).**

Airtronic claims that Fauci and Mendenhall were added to the Amended Counterclaim based on their actions, not their titles (Opp'n to Mot. to Dismiss 11, 15), and presumably this argument extends to Hillenburg as well. But Airtronic has not named any of the three individual Counter-Defendants in any of the three counts in its Amended Counterclaims, either as individuals or as officers of Trident. Only Trident the corporation is alleged to have breached the contract and/or committed fraud -- not any of its individual officers. Airtronic was required, among other things, to plead the who, what, when where, and how of the misconduct charged. *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 885 (E.D. Va. 2008). However, it has not, and has therefore failed to state a claim upon which relief can be granted, and therefore the Amended Counterclaim as to the three individual Counter-Defendants should be dismissed.

### III. Counts II and III Do Not Meet the Heightened Pleading Standard of Rule 9(b), And Should Therefore Be Dismissed.

Airtronic is attempting to have its cake and eat it, too -- with its Amended Counterclaim it seeks to hold the three individual Counter-Defendants personally liable for fraud without alleging how any of the three individuals committed fraud. Airtronic argues that it has alleged what occurred, when it occurred, the effect thereof, and what was gained. (Opp'n to Mot. to Dismiss 18.) However, this only alleges how Trident, not Hillenburg or Fauci or Mendenhall individually, committed fraud. Piercing the corporate veil is an extraordinary remedy, and the Supreme Court of Virginia has been reluctant to permit it. *Dana v. 313 Freemason, A Condo. Ass'n*, 266 Va. 491, 502 (Va. 2003). Airtronic seems to believe it is entitled to such a remedy without even alleging the fraudulent acts of the individual Counter-Defendants that entitle it to this extraordinary relief, but it is not.

The case that Airtronic cites for its proposition that it is not required to name names or other specific items is inapplicable. There was no piercing the corporate veil claim in *Nahigian v. Juno Loudon, LLC*. 684 F. Supp. 2d 731, 738-39 (E.D. Va. 2010). In fact, there were no individual defendants. Instead, the defendants were both corporations, and when the court said that "it was sufficient that the plaintiff had named the entity, though not the specific person, making the representations," the court was referring to the fact that it was sufficient that the plaintiff has alleged that a representative of the defendant had made a misrepresentation. *Id.* That is, when alleging a corporation committed fraud -- and not individual corporate officers -- it is unnecessary to name who exactly in the corporation made the misrepresentation. Unlike the instant case, no "representatives" or any other individuals were party to the lawsuit in *Nahigian*-- just the corporation. Although the individual Counter-Defendants are being represented by the same counsel, they are being sued individually and could be held personally liable; it would be unfair and unjust to seek to hold one or all of them accountable as individuals when they have no reasonable notice of what fraud they, as individuals, allegedly perpetrated. One of the purposes of Rule 9(b), as Airtronic noted, is to ensure that "the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The individual Counter-Defendants do not have sufficient information to formulate a defense, and as such Count II and Count III should be dismissed for failing to meet the particularity requirements of Rule 9(b).

**Conclusion**

The Motion to Dismiss should be granted and the Amended Counterclaim should be dismissed as to Samuel Hillenburg, Brian Fauci and Monty Mendenhall.

Date submitted: July 26, 2010            Respectfully submitted,

/s/ Rebecca A. Worthington
Alan L. Briggs, (VSB No. 38667)
Rebecca A. Worthington (VSB No. 79232)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Avenue, NW
Suite 500
Washington, DC 20004
Phone: (202) 626-6600
Facsimile: (202) 626-6780
Counsel for Trident Enterprises, Ltd.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically on this 26th day of July 2010 with the Court using the CM/ECF system, and a copy of the same will be made available by operation of that system as well as being provided electronically and by hand delivery to the following:

>Gabriel D. Soll
>Jeffrey S. Jacobovitz
>Attorneys for Defendant
>MCCARTHY, SWEENEY & HARKAWAY, PC
>1825 K Street, N.W.
>Suite 700
>Washington, D.C. 20006

>/s/ Rebecca A Worthington
>Rebecca A. Worthington