UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **TRIDENT ENTERPRISES, LTD., et al.** ) | |
| ) | |
| **Plaintiff/Counter-** ) | |
| **Defendants** ) | |
| ) | |
| v.  ) | Civil Action No.  1:09-cv-1355 |
| ) | |
| **AIRTRONIC USA, INC.** ) | |
| ) | |
| **Defendant/Counter-** ) | |
| **Claimant** | |

### DEFENDANT'S GLOBAL OPPOSITION TO PLAINTIFFS' FIVE MOTIONS IN LIMINE

Comes now, Defendant, Counter-Claimant, Airtronic USA, Inc. ("Airtronic"), by and through its undersigned counsel, and opposes Plaintiff, Trident Enterprises, Ltd.'s ("Trident") and the individual Counterclaim Defendants' five motions in limine filed August 20, 2010.  In those motions, Trident urges the Court disallow testimony or impeachment related to five different areas.  Airtronic urges the court to permit it to reference, argue, elicit testimony, impeach or describe each of the five areas at trial as they are relevant to the matter before the court and proper under the Federal Rules of Evidence.  For this reason, each of the motions in limine should be denied.

Airtronic states the following in support of its opposition:

**I.    BACKGROUND**

On August 20, 2010, Trident and the Individual Counterclaim Defendants filed five motions in limine in anticipation of trial which is set to begin September 13, 2010. The first motion in limine ("Motion #1") seeks to exclude testimony, evidence, or reference to a criminal complaint filed by Samuel Hillenburg ("Hillenburg"), the

1

President of Trident, and an individually-named Counterclaim Defendant, against Robert Walter, the President of Airtronic. The second motion in limine ("Motion #2") seeks to exclude testimony, evidence, or reference to "Ramsey Bear," a fictitious identity employed by Monty Mendenhall ("Mendenhall"), an officer of Trident, and an individually-named Counterclaim Defendant, and used, along with a phony social security number, to obtain a credit card and open a bank account. The third motion in limine ("Motion #3") seeks to exclude testimony, evidence, or reference to pending litigation between Mendenhall and Mr. E. Daniel Shea in another jurisdiction. The fourth motion in limine ("Motion #4") seeks to exclude testimony, evidence, or reference relating to the description of Mendenhall as a "litigious curmudgeon" by the President of Trident. The fifth motion in limine (Motion #5) seeks to exclude testimony, evidence, or reference to Brian Fauci's ("Fauci"), Trident's Vice President, and an individually-named Counterclaim Defendant, prior employment at Kodak.

### II. ARGUMENT

#### a. Standard of Review

"Preliminary questions concerning ... the admissibility of evidence shall be determined by the court. In making its determination it is not bound by the rules of evidence except those with respect to privileges." Fed. R. Evid. 104(a). Rather, courts undertake the inquiry concerning the specifics of each motion and decide them upon the merits and arguments. The Federal Rules of Evidence are instructive however, as they supply the basis for the ultimate inclusion or exclusion of evidence on a particular matter.

#### b. Motion #1 Should Be Denied Because the Issue is Relevant, Speaks to Credibility, and Is Neither Unfairly Prejudicial Nor Confusing.

During the pendency of this case, Hillenburg, with the encouragement and assistance of Mendenhall, filed a criminal complaint with the Commonwealth of Virginia against Robert Walter, President of Airtronic. The attached email (Exhibit 1) clearly indicates that the Complaint was filed to gain leverage for settlement in this civil suit. The Commonwealth declined prosecution, noting that the venue may be improper and that the "allegation of extortion was more akin to a contractual dispute." Motion #1, Ex. A, Exhibit 2 of this Opposition. This explanation, contained in the case record signed by Det. Lowrey of the Arlington County Police Department is arguably hearsay, and would not be the focus of the inquiry.

Trident seeks to have the court exclude any testimony, evidence, or reference to the criminal complaint that was filed in Arlington, Virginia by Hillenburg. Contrary to Trident's assertions, this testimony is relevant to the matter before the court and would be neither unfairly prejudicial nor confusing to the jury.

Relevancy of evidence is a simple determination that seeks to understand if a fact makes the determination of an action more probable with the evidence than without it. Fed. R. Evid. 401. Even if relevant, evidence may be excluded under the Federal Rules if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Allowing testimony, evidence, or discussion of the criminal complaint is proper as the issue is relevant and sheds light on aspects of Airtronic's case. Airtronic has pleaded, in addition to a breach of contract counterclaim, claims of fraud and constructive fraud, and seeks to attach joint and several liability to the individual Counterclaim

defendants.  In general, the act of filing the criminal complaint speaks to the motives of the individual Counterclaim Defendants.  As Trident anticipated in Motion #1, the value of the criminal matter indicates "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" as permitted under Federal Rule of Evidence 404(b).  Testimony concerning the criminal complaint and surrounding evidence are directly related to the issues in this case, as it will help inform whether or not the motive of the individual Counterclaim Defendants is proper or fraudulent.

To the degree this issue is determined collateral, it is only properly excluded if "no fair inferences can be drawn tending to throw light upon the particular facts under investigation." *Tunnell v. Ford Motor Co.*, 330 F.Supp.2d 748, 762 (4th Cir. 2004), quoting *Spurlin Admi'x v. Richardson,* 203 Va. 984, 990, 128 S.E. 2d 273 (Va. 1962). Trident's assertions concerning the intended use draws improperly assumed conclusions, and does not consider "fair inferences" that can be drawn. The criminal complaint need not be presented solely to imply that because it was not prosecuted, the civil case is meritless.  Motion #1, 3.  The criminal complaint and the representations of the defendants among themselves demonstrate their intent to, and actual use of the Virginia courts and law enforcement to further improper means. See also Declaration of E. Daniel Shea at Exhibit 3.

The issue will not confuse a jury nor lead it to make a decision based on an unrelated factor.  Motion #1, 3.  Rather, permitting this line of inquiry will permit Airtronic to give an accurate impression of the intents and motives of the Counterclaim Defendants as well as demonstrate their willingness to use the Virginia court system for improper purposes.  Evidence of their actions is not automatically unduly prejudicial.

Further, the case report attached as (Exhibit 2) would likely be inadmissible as hearsay and would not need to be used in order to discuss this issue.

The criminal complaint filed by Hillenburg is relevant to the issues underlying this case and should be permitted for use in trial as it will not confuse a jury or unduly prejudice Trident or the individual Counterclaim Defendants. This is not a collateral issue that will merely "excite and mislead" the jury, but rather is one which can shed light on Airtronic's claims.

For these reasons, Motion #1 should be denied and testimony, evidence, or discussion should be permitted regarding the criminal complaint brought by Hillenburg in Arlington, Virginia.

### c. Motion #2 Should Be Denied Because the Issue is Relevant and Not Unfairly Prejudicial.

Motion #2 seeks to have the court exclude testimony, evidence, or discussion of a "Ramsey Bear." As discussed in the Motion, Mendenhall admitted to use of a false identity, complete with social security number, bank account, and credit card for what he considered to be a joke. Trident characterizes the matter as "nothing more than a silly, innocent way for a man to give gifts to his family." Motion #2, 3. To the contrary, the extremes that Mendenhall went to in pursuit of this generosity indicate a much more serious willingness to disregard laws and regulations and relate to the claims in this case.[1]

Federal Rule of Evidence 404(b) permits the inclusion of evidence relating to "other crimes, wrongs, or acts" except to prove the character of the actor consistent with

---

[1] Many parents have been known to give gifts to their children under the guise of the Tooth Fairy, the Easter Bunny, or Santa Claus; however few of them feel the need to perpetrate a fraud on a bank, credit card, and likely the tax system in the process.

them. The Fourth Circuit explained this rule as necessary because such evidence does not supply a causal link between the conduct presented and the conduct described. *U.S. v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997). The court noted, however, that the rule "does not disqualify evidence of earlier specific states of mind from proving a later similar state of mind." *Id.* In discussing the application of Fed R. Evid.404(b), the court articulated the following four-part test to determine the admissibility of prior-act evidence: 1) the prior-act must be relevant to an issue other than character, such as intent; 2) it must be necessary to prove an element of a claim; 3) it must be reliable; and 4) its probative value must outweigh its prejudicial effects. *Id.*, accord. *Fairshter v. American Nat'l Red Cross*, 322 F.Supp.2d 646, 656-7 (E.D.Va. 2004).

  The theme of Ramsey Bear is relevant to this trial as Airtronic has alleged a claim of fraud, which includes an intent element. See *Bank of Montreal v. Signet Bank,* 193 F.3d 818, 826 (4th Cir. 1999). Despite needing to advance the inquiry to be relevant under Fed. R. Evid. 401, this evidence is likely admissible under the Fourth Circuit's four-part test. Testimony, evidence, and discussion of Mendenhall's previous mental state which indicates the intent to defraud, is an aspect of Airtronic's burden. Trident and the Counterclaim Defendants seek to preclude this because the "reliable evidence" is Mendenhall's own testimony. Finally, any inquiry will not unduly prejudice Mendenhall as the actions speak to aspects of the case that, while they may be sensitive as a fraud was perpetrated, would not incite a jury to irrational behavior. Instead, they will show that the similarity of the acts' probative value will be even more relevant. *Queen*, at 998. The fact that it is prejudicial to Mendenhall should not warrant its exclusion; any act by an

individual using a phony social security number and defrauding a credit card company and bank should be prejudicial, but that does not lessen its probative value.

For these reasons, Motion #2 should be denied and testimony, evidence, and discussion should be permitted regarding "Ramsey Bear."

### d. Motions #3 & #4 Should Be Denied Because the Issues are Relevant and Not Unduly Prejudicial.

Motion #3 asks the court to exclude testimony, evidence, or discussion of another lawsuit to which Mendenhall is a party against E. Daniel Shea (the "Shea Litigation"). Airtronic does not contend that the substance of that litigation is relevant here, but rather that the existence of and the tactics employed during the litigation relate to Mendenhall's propensities as they relate to those he feels have wronged him.[2] Motion #4 seeks to exclude testimony, evidence, or discussion of Mendenhall as a "litigious curmudgeon", as characterized by the President of the defendant Trident, Hillenburg. Trident attempts to characterize a particular piece of evidence as "quick quip between friends," which is a conclusion about the document that a jury should be allowed to reach as its probative value outweighs its prejudicial effects.

These motions are clearly related to Mendenhall's propensity to use litigation for improper purposes and by improper means. Mr. Shea indicates in his attached Declaration that Mendenhall has threatened his family, has defamed him on the internet, and has indicated Mendenhall attempted to wipe his hard drive to preclude the discovery

---

[2] Trident's discussion of "wiping" a hard-drive is not nearly as clear cut as they would have the court believe. In the testimony provided with Motion #3 (Exhibit 4, herein), Mendenhall never directly answers the question of whether or not he produced all of his e-mails. Instead, he responds with a tautology that "everything that they have they've got."

7

of documents. Exhibit 3. As such, this type of evidence may be admissible under the same rationale as discussed relating to Motion #2, above.

Discussion of the Shea Litigation is relevant to this claim as it indicates Mendenhall's tactics of instituting lawsuits when he feels he is wronged and attempting to extract settlements in an improper manner. Such evidence certainly advances Airtronic's inquiry relating to Mendenhall's mental state regarding retaliatory methods when he feels he is wronged.

Similar evidence was deemed wrongly excluded by the Fourth Circuit in a recent decision concerning a discrimination case. In *Buckley v. Mukasey*, 538 F.3d 306, 317-321 (4th Cir. 2008), the Fourth Circuit ruled that evidence of previous litigation was wrongfully excluded as it pointed to a litigant's theory of her opponents' "retaliatory animus." Such evidence was deemed admissible under the rationale that it was relevant under Federal Rule of Evidence 403 as it showed a state of mind which outweighed the prejudice created. Further, the impression of Mendenhall by one of his co-Counterclaim Defendants is an evidentiary matter which may be properly admitted under F.R.E. 608 [Character and Conduct of a Witness].

Evidence of Mendenhall's methods of instituting a specious law suit and attempting to extract a settlement should also be admissible under Federal Rule of Evidence 406, as a habit or routine practice. The fact that Mendenhall states that he has only been involved in two lawsuits (including this one) is not determinative of whether or not this behavior is a pattern. The "extent to which instances must be multiplied and consistency of behavior maintained in order to support an inference of habit and pattern of conduct cannot be formulated." *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494,

511-12 (4th Cir. 1977), citing Fed. R. Evid. 406 advisory notes. Due to the nature of this particular behavior, Mendenhall would only have but so many opportunities to employ it. Nonetheless, the testimony, evidence, and discussion of his litigious nature and pattern of attempting to extract settlements in the face of unrealistic law suits should be presented for a jury to consider.

Federal Rule of Evidence. 405 provides that when character evidence is admissible, as it is in this matter, such may be shown through testimony as to reputation or opinion. As referenced in Motion #4, Airtronic contends there is evidence that should be presented to the jury of one co-Counterclaim Defendant to the other referencing the recipient as a "litigious curmudgeon." In light of the habit and pattern that could be established through other evidence, and continuing the inquiry as to the character of Mendenhall fraudulent intentions, this testimony concerning his character should be permitted. The explanation that it was a "friendly quip" could easily be explained in cross-examination, as alleged in the motion, and given to the jury to weigh.

Motions #3 & #4 should be denied and testimony, evidence, and discussion relating to the Shea Litigation and Mendenhall as a "litigious curmudgeon" should be permitted.

### e. Motion #5 Should Be Denied Because the Issue is Relevant, Non-Prejudicial, and Would Not Waste Time Nor Confuse the Jury.

The final motion in limine seeks to exclude testimony, evidence, and discussion relating to Fauci's termination of employment at Kodak. The motion posits that this discussion has no bearing on the instant litigation and would be unfairly prejudicial, waste time, or confuse the jury as it is a "breach of contract case." What the motion fails

9

to mention is that the termination of Fauci's employment at Kodak and the breach of contract counterclaim are very much related, as described below.

This line of inquiry is directly relevant to Airtronic's breach of contract claim. One aspect of the breach which Airtronic alleges is that Trident and the Counterclaim Defendants failed to convey technical drawings of the grenade launcher which would enable Airtronic to produce and market them. Fauci originally created the computer drawings during (but unrelated to) his employment at Kodak. He admitted in deposition that these drawings were "personal" but were "related to the grenade launcher," and that Kodak destroyed the drawings and terminated his employment upon discovering them. Motion #5, 1; Motion #5, Exhibit 5 of this Opposition (Dep. of B. Fauci, June 4, 2010, 40:10-41:19). The destruction of these files is relevant to the inquiry concerning that aspect of the contract's performance and also is relevant to the issue of who owns the gun.

This issue is also informative regarding the joint and several liability sought by Airtronic. Fauci and the other Counterclaim Defendants have changed their positions on several occasions as to whether any aspect of the grenade launcher actually belonged to Trident or only to Fauci (by way of disclaiming responsibility for federal licensing or registrations to manufacture or transfer firearms). The argument that Airtronic would explore this issue at trial simply to demonstrate that Fauci is an "unsavory character" is simply misplaced, as the issue has clear bearing on aspects of Airtronic's case.

The testimony relating to what Fauci did while employed at Kodak, which may have led to his termination, is probative of two important aspects of Airtronic's case, and Motion #5 should be denied.

**III. CONCLUSION**

All five motions seek to exclude testimony and evidence on issues which are relevant to Airtronic's case.  The mere notion that these issues may have an effect on the jury's opinion of Trident or the individual Counterclaim Defendants is clearly outweighed by their value in understanding the case presented and the credibility of the witnesses testimony.  Airtronic respectfully requests that all five motions in limine be denied.

Dated : August 25, 2010                    Respectfully submitted,

                McCarthy Sweeney & Harkaway, P.C.

                _____/s/_____
                Gabriel D. Soll (VSB No. 66734)
                Jeffrey S. Jacobovitz (admitted *pro hac vice*)
                McCarthy, Sweeney & Harkaway
                1825 K Street, N.W., Suite 700
                Washington, D.C. 20006
                (202)775-5560 (tel)
                (202) 775-5574 (fax)
                gsoll@mshpc.com
                Attorneys for Airtronic USA Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of August, 2010, a copy of the foregoing Opposition to Plaintiff's Motions filed August 20, 2010 was filed electronically through the Court's CM/ECF system, which notifies those noted below of its service. A courtesy copy has also been sent via first class mail to:

Alan Briggs, Esq. (abriggs@ssd.com)
Rebecca Worthington, Esq. (rworthington@ssd.com)
Squire, Sanders & Dempsey, L.L.P.
1201 Pennsylvania Ave., N.W.
Suite 500
Washington, D.C. 20004

Counsel to Trident Enterprises, Ltd.
        Samuel Hillenburg
        Monty Mendenhall
        Brian Fauci

                                            _____/s/_____
                                            Gabriel D. Soll