UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TRIDENT ENTERPRISES, LTD., et al, )<br>)<br>        **Plaintiff,** )<br>        **Counter-Defendant;** )<br>)<br>v.                                    )<br>)<br>AIRTRONIC USA, INC.            )<br>)<br>        **Defendant,** )<br>        **Counter-Plaintiff.** ) | Civil Action No.  1:09-cv-1355<br>CMH/TCB |

**PLAINTIFF TRIDENT'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTIONS IN LIMINE NO. 1-5**

As Motions in Limine Numbers One through Five all cover information that is either irrelevant, unfairly prejudicial, or both, Plaintiff Trident moves this Court *in limine* for an order instructing Defendant Airtronic to refrain from referring to, eliciting testimony about, arguing about, commenting on, or describing the criminal complaint that Counter-Defendant Hillenburg filed, "Ramsey Bear", other litigation that Counter-Defendant Mendenhall is involved in, any reference to Counter-Defendant Mendenhall as a "litigious curmudgeon," and the termination of Counter-Defendant Fauci's employment with Kodak.  Each of the five motions will be addressed in order.  Plaintiff Trident respectfully requests that this Court GRANT its five Motions in Limine.

**I.     Criminal Complaint Filed By Mr. Hillenburg, Motion in Limine No. 1**

Defendant Airtronic states that the criminal complaint was filed by Mr. Hillenburg to gain leverage for settlement in this civil case, and references an e-mail which it claims "clearly

indicates" Mr. Hillenburg's intentions. (Def.'s Opp'n 3, Ex. 1.) However, the e-mail clearly indicates that was not Mr. Hillenburg's motivation at all. Mr. Mendenhall, another Counter-Defendant, noted that if a criminal complaint went forward that it could supply more leverage for a settlement, but Mr. Hillenburg responded to the contrary: **"[T]he two are separate. We can't use it as leverage and we have no control on whether it goes or not. He committed an extortion threat and then carried it out. That's a crime."** (Def.'s Opp'n 3, Ex. 1.) Mr. Hillenburg filed a criminal complaint because he believed a crime had been committed, the crime of extortion. Airtronic threatened to destroy Hillenburg's property if they did not pay $50,000, and when Trident did not pay Airtronic it received its property back in pieces. (Def.'s Opp'n 3, Ex. 1.) Delving into Mr. Hillenburg's motivation for filing the criminal complaint, as well as the reasons why the criminal complaint never went any further, would be a waste of time and would send the case off on an unrelated, irrelevant path.

Defendant Airtronic also claims that the criminal complaint is relevant as it goes to its counterclaims of fraud and constructive fraud. Airtronic alleges that Trident made false misrepresentations of material facts related to the agreements between the parties, specifically that Trident represented that the product worked properly, that it would convey the appropriate documents, and that it had met the appropriate licensing requirements. (Am. Countercl. ¶ 33.) Airtronic claims that but for these misrepresentations Airtronic would not have entered into the agreement with Trident. (Mot. for Summ. J. 14.) The fraud Airtronic claims occurred pertains to the contract between the parties. Whether Mr. Hillenburg filed a criminal complaint two years later is irrelevant to whether fraudulent misrepresentations were made to Airtronic at the time they signed the contract.

II.     **"Ramsey Bear", Motion in Limine No. 2**

By its very language Airtronic has demonstrated how it intends to use Ramsey Bear to unfairly prejudice the jury against Mr. Mendenhall and Trident. Airtronic characterizes Ramsey Bear as a "fictitious identity . . . used, along with a phony social security number, to obtain a credit card and open a bank account." (Def.'s Opp'n 2.) This is a gross mischaracterization. Mr. Mendenhall did not use Ramsey Bear for his own personal gain or for the illegal purposes traditionally associated with using a fictitious social security number. Yet Airtronic intends to use Ramsey Bear in an effort to distract the jury and confuse the issues in this case. It is unfairly prejudicial, as it would have the tendency to suggest decision on an improper basis. Fed. R. Evid. 403 (Advisory Committee Note).

Defendant Airtronic also says that Ramsey Bear is relevant as it indicates Mr. Mendenhall's intent to defraud. (Def.'s Opp'n 6.) Airtronic fails to state who exactly was defrauded and damaged by Ramsey Bear, and they cannot, as no one was injured by Ramsey Bear. As explained in Plaintiff's Motion in Limine No. 2, the bank was fully aware that Ramsey Bear was a teddy bear and found it humorous. Mr. Mendenhall paid all of Ramsey Bear's bills. Ramsey Bear's account expired around ten years ago, years before any contract arose between Airtronic and Trident. As any discussion of Ramsey Bear would be unfairly prejudicial and irrelevant, the Court should grant Plaintiff's motion.

**III.    Dan Shea Litigation and "Litigious Curmudgeon", Motion in Limine Nos. 3 & 4**

The Motions in Limine regarding the Dan Shea litigation and any references to Mr. Mendenhall as a "litigious curmudgeon" should be granted, as they are both irrelevant and prejudicial. It is irrelevant because whether Mr. Mendenhall is engaged in one other lawsuit does not shed light upon whether contracts were breached or whether facts were misrepresented

in the formation of those contracts. Airtronic alleges that the information is relevant because it shows Mr. Mendenhall's "propensity to use litigation for improper purpose and by improper means." (Def.'s Opp'n 7.) Even if that were accurate, which it is not, the prejudicial nature of the information would substantially outweigh any probative value. Airtronic would like to use it as an indicator that Trident's case is meritless.

The *Buckley* case that Defendant Airtronic cites in its opposition was based on claims completely different from the ones involved in this case. *Buckley v. Mukasey*, 538 F.3d 306, 308 (4th Cir. 2008) (claims involved included race discrimination, sex discrimination, and retaliation claims). The plaintiff in *Buckley* sought to introduce prior lawsuits to demonstrate the defendant's retaliatory animus, which she was required to prove for her retaliation claims. *Id.* at 318-19 ("Buckley's *Segar* litigation theory . . . was ***essential*** to her failure-to-promote claim.") (emphasis added). Airtronic has no such burden, as it does not have a retaliation claim. Furthermore, *Buckley* can be distinguished from this case in that plaintiff and defendant in *Buckley* were parties to both the past and present litigation. *Id.* at 309-310 (a 1977 class action alleging race discrimination by the DEA against African-American agents, a 1997 motion for a compliance order, and the case at issue, which was filed in 2005). Only Mr. Mendenhall-- not Trident, not the other two Counter-Defendants-- are plaintiffs in the Dan Shea litigation, and Dan Shea is not a party to the case before this Court. Airtronic has no relationship with Dan Shea. *Buckley*, and the case law it rests upon, applied to retaliation claims in the employer-employee relationship. *Id*. at 319. The claims before this Court are for breach of contract, fraud, conversion, and tortious interference with business relations. Plaintiffs' Motions in Limine regarding Mr. Mendenhall's lawsuit with Dan Shea and any reference to Mr. Mendenhall as a "litigious curmudgeon" should be granted.

### IV. Mr. Fauci's Termination at Kodak, Motion in Limine No. 5

Defendant Airtronic alleges that Mr. Fauci's termination at Kodak is relevant because (1) the destruction of Mr. Fauci's drawings sheds light on whether Trident conveyed sufficient technical drawings to Airtronic, and (2) it touches upon the joint and several liability sought by Airtronic, particularly whether the gun belonged to Trident or Mr. Fauci. The fact that Mr. Fauci was terminated from Kodak, and the reasons behind it, are irrelevant to those two issues. Those facts do not have any tendency to make the existence of whether Trident conveyed sufficient drawings to Airtronic, or who (Trident or Mr. Fauci) owned the gun more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. For the purposes of this case, why the drawings were destroyed is tangential to the fact that they were destroyed, and is irrelevant to what Airtronic is suggesting, i.e., the fact that Mr. Fauci's drawings were destroyed indicates that technical drawings conveyed to Airtronic did not enable them to produce and market the grenade launcher. Contrary to what Airtronic alleges its purported use would be, Airtronic would like to introduce the fact that Mr. Fauci used his employer's property and was let go shortly thereafter-- implying that Mr. Fauci should not be trusted. Mr. Fauci's termination with Kodak is a collateral, irrelevant fact, and Plaintiff's motion should be granted. *See Tunnell v. Ford Motor Co.*, 330 F. Supp. 2d 748, 762 (W.D. Va. 2004) (noting that evidence of collateral facts, from which no fair inferences can be drawn tending to throw light upon the particular facts under investigation, should be excluded).

Date submitted: Aug. 30, 2010            Respectfully,

                                         /s/ Rebecca A Worthington

                                         Alan L. Briggs, (VSB No. 38667)

Rebecca A. Worthington (VSB No. 79232)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Avenue, NW
Suite 500
Washington, DC 20004
Phone: (202) 626-6600
Facsimile: (202) 626-6780

Counsel for Trident Enterprises, Ltd.

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing Reply Memorandum was filed electronically on this 30th day of August 2010 with the Court using the CM/ECF system, which notifies those noted below of its service.

  Gabriel D. Soll
  Jeffrey S. Jacobovitz
  Attorneys for Defendant
  M<small>C</small>C<small>ARTHY</small>, S<small>WEENEY</small> & H<small>ARKAWAY</small>, PC
  1825 K Street, N.W.
  Suite 700
  Washington, D.C. 20006

                /s/ Rebecca A. Worthington
                Rebecca A. Worthington