# EXHIBIT 2


**BEAN KINNEY & KORMAN**
ATTORNEYS

2300 WILSON BOULEVARD
7TH FLOOR
ARLINGTON, VA 22201
PHONE 703.525.4000
FAX    703.525.2207

# MEMORANDUM

**TO:**    Alan L. Briggs

**FROM:**  Leo S. Fisher

**DATE:**  August 9, 2010

**RE:**    Expert Report - Trident Enterprises, Ltd. v. Airtronic USA, Inc.

---

**Introduction**. You asked me to render opinions with regard to Airtronic's counterclaim allegations seeking to pierce the corporate veil of Trident. You provided copies of certain pleadings and other documents, a list of which is attached as Exhibit 1 to this Report. In addition, you asked me to assume as true certain additional facts set forth in your letter of August 1, 2010, attached as Exhibit 2.

**Summary of Opinion**. Based on my 30 years of experience in the private practice of law, including the representation of numerous closely held corporations or their principals, the documents you provided (Exhibit 1) and the facts you asked me to assume (Exhibit 2), I am of the opinion, within a reasonable degree of certainty, that the corporate actions of Trident are generally consistent with the actions of similarly situated small businesses organized as closely held corporations with regard to corporate formalities, capitalization, bank accounts, corporate filings and annual reports, tax returns and other corporate actions of closely held corporations. A further discussion of my opinion is provided below.

**Experience**: I have been engaged continuously in the private practice of law for more than 30 years. A significant portion of my practice throughout that time has involved the representation of small businesses organized as corporations and owned by a limited number of shareholders. I have advised many clients on entity selection, then assisted in formation and organization of the entity, and advised with respect to the legal issues that arose in operating the business. Other clients first came to me for counsel after the corporation had been formed. I have represented these businesses or their principals on a broad range of issues, including internal issues of control and governance, litigation involving claims of an officer's or director's breach of fiduciary duties, and other ownership disputes. I have also represented clients with respect to the purchase or sale of a business, including both asset and stock sales.



During the course of these engagements, I have been called on repeatedly to review and advise regarding the corporation's corporate records, including the contents of minute books, corporate filings with state agencies, separation of corporate and personal finances, and a variety of tax issues. I have also addressed questions of corporate existence and piercing the corporate veil. In my experience, there is a broad range within which small business corporations undertake and document their corporate actions and capitalize their businesses. Some are more attentive than others to deadlines for filing annual reports or the like; and, as a result, it is not unusual for these corporations to pay late fees for late filings or to need to seek reinstatement of their corporate existence. Many have no minute book or a minute book with virtually no content. A not inconsiderable number of these corporations have conducted their corporate affairs with less than best practices. They have made the minimum corporate filings necessary to form and maintain corporate status, maintained a separate bank account or accounts for the business, and consistently held out the business as a corporation.

**Summary of Facts**. The following summary is derived from the documents listed in Exhibit 1 and your letter (Exhibit 2).

Trident Enterprises, Ltd. was organized in 2003 in North Carolina. Its Articles of Incorporation were signed August 18, 2003 and filed with the Department of the Secretary of State of North Carolina on August 28, 2003. The Secretary of State's office issued a Certificate of Existence for Trident on July 8, 2010, stating that it had been duly incorporated under the laws of North Carolina on July 18, 2003, and that as of July 8, 2010 the Articles of Incorporation were not suspended, it was not administratively dissolved, its most recent annual report had been delivered to the Secretary of State, and it had not filed articles of dissolution. Trident elected Subchapter S status under the Internal Revenue Code, effective August 28, 2003.

Mr. Hillenburg purchased a corporate minute book for Trident and copies of the contents thereof were provided to me (Exhibit 1, Item 7, 1A). The minute book contains or reflects the following:

- Articles of Incorporation referenced above: stating among other things, the name of the corporation, authorizing it to issue 2,000 shares of common stock at 0.01 par value, naming Mr. Hillenburg as registered agent, and identifying the principal office and registered office addresses. The filing fee was $125.

- The Board of Directors of Trident, whose members were Mr. Hillenburg, Mr. Fauci and Mr. Mendenhall, held meetings every year from 2003 to 2010. Often they were held at a shooting event in Knob Creek, Kentucky. In some years, there was more than one meeting. Mr. Hillenburg prepared minutes of the meetings, apparently using a pre-printed form in the minute book, which he completed by hand, signed and dated. The first meeting was held October 10, 2003 with all directors present. At that meeting, Mr. Hillenburg was elected President and Secretary, Mr. Fauci was elected Vice President, and Mr. Mendenhall Treasurer. Further meetings were held November 9, 2003, February 16, 2004, October 14, 2005, October 13, 2006,



June 28, 2007, October 12, 2007, October 10, 2008, October 8, 2009, and June 4, 2010, and Mr. Hillenburg prepared, signed and dated minutes for each. The minutes reflect discussions relating to various aspects of Trident's business, including opening a corporate bank account, issuance of stock certificates, Mr. Fauci's progress with respect to the historic gun, and the contract with Airtronic. At least two of the three directors were present at each meeting.

- The minute book contained a set of Bylaws, which are signed by Mr. Hillenburg as President. A few blanks relating to the state of incorporation were not filled in in the Bylaws. There is no discussion in the minutes of adoption of the bylaws.

- The minutes of the October 10, 2003 state in part that stock certificates would be issued but held with the corporate books for safekeeping. There are three stock certificates, numbered 01, 02 and 03, in the names of Mr. Hillenburg, Mr. Mendenhall and Mr. Fauci respectively, representing a total of 2,000 shares of common stock at $0.01 par value. The certificates are dated October 10, 2003, and are signed by Mr. Hillenburg as President and Secretary, as provided in the Bylaws.

- The minute book contains a Stock Transfer Ledger, which reflects the issuance of the stock certificates to Mr. Fauci, Mr. Hillenburg and Mr. Mendenhall as recited above.

- The minute book contains an email dated 5/10/2007, from Mr. Walter to Mr. Hillenburg, concerning Airtronic's interest in licensing the gun design for manufacturing.

In his Declaration attached as Exhibit 1 to Defendants' Rebuttal Memorandum (Exhibit 1, Item 7 hereto), Mr. Hillenburg provides additional information regarding the formation and operation of the corporation (Trident). He stated that he and Mr. Fauci had a long-standing interest in a historic gun. They decided to form a corporation and asked Mr. Mendenhall to participate in the venture. Mr. Mendenhall invested $50,000 for his shares, Mr. Hillenburg and Mr. Fauci provided "sweat equity" - Mr. Hillenburg to manage the business and Mr. Fauci to build the guns. They considered $50,000 in capital to be sufficient for their purpose, which was to make a limited number of guns.

On March 11, 2010, North Carolina notified Trident that it was delinquent in delivering five annual reports, and that the Secretary of State was authorized to dissolve the corporation administratively. In order to prevent dissolution, the Notice stated that Trident had to file appropriate annual reports within 60 days. In response, Mr. Hillenburg prepared and filed annual reports for the years 2003 trough 2010 on or about May 18, 2010.

On or about June 21, 2007, Trident executed a license agreement with Airtronic. The contract was executed in the legal name of both parties, and Mr. Hillenburg signed the agreement for Trident as its CEO.



I also reviewed eight checks from Airtronic to Trident, some of which were endorsed by Mr. Hillenburg, the others were stamped For Deposit Only, Trident Enterprises, Ltd. (Exhibit 1, Item 6). Pursuant to your letter of August 1, 2010 and Mr. Hillenburg's Declaration, I have assumed that all of these checks were deposited to Trident's bank account and the funds used for corporate, not personal purposes.

I also reviewed Trident's tax returns for the years 2003 through 2009, which were prepared by David Hiatt, a Certified Public Accountant with the firm of Sharrard, McGee & Co. P.A., in High Point, North Carolina. The returns were filed in July 2010. The returns reflect that Trident first received revenues in 2008, in the amount of $50,000 in License Fees. As of December 31, 2009, its accumulated losses were $61,611.

**Opinion**: I have formed the opinion to a reasonable degree of certainty that the corporate actions of Trident are generally consistent with the actions of similarly situated closely held corporations with regard to corporate formalities, capitalization, bank accounts, corporate filings and annual reports, tax returns and other corporate actions of closely held corporations. Trident is a small, closely held corporation. It is owned by three stockholders, all of whom serve as its directors and officers. It has no paid employees, although Mr. Hillenburg and Mr. Fauci provide services to the corporation. The stockholders, Mr. Hillenburg, Mr. Fauci and Mr. Mendenhall, apparently elected "S" status, so that the financial results of the corporation pass through to their individual tax returns.

**Capitalization**. It is my opinion, within a reasonable degree of certainty, that Trident's capitalization was consistent with that of similarly situated closely held corporations. Trident was initially formed for the purpose of developing an historic gun design and expected to produce a limited number of those guns for other gun enthusiasts. To this end, the total capitalization of the corporation was $50,000. The stockholders believed this sufficient for the purpose. Many corporations are formed with initial capital of $1,000. Later, Airtronic approached Trident about the possibility of commercializing the gun. A contract was signed whereby Airtronic licensed the design from Trident and paid Trident a license fee. Airtronic was responsible for manufacturing costs and would pay Trident an additional fee per gun sold.

Trident issued stock certificates to its shareholders for either cash or sweat equity. This is a common practice among closely held corporations. The amount of paid in capital - $50,000 - is not unusual and is certainly within a range for similar small companies. Given Trident's limited business purpose, and the fact that much of its work would be done by two shareholders as "sweat equity," the capital invested seems appropriate. Based on the tax returns, it is also apparent that Trident's operations were limited, as anticipated by the shareholders. Although the Airtronic contract expanded the scope of Trident's business, it did not lead to a major expansion of costs. Rather, it provided an income stream in the form of a license fee.

**Minute Book and Related Formalities**. It is my opinion, within a reasonable degree of certainty, that the contents of Trident's minute book and related formalities were



consistent with or exceeded that of similarly situated closely held corporations. Trident maintained a corporate minute book, issued stock certificates to its stockholders, and the directors, who were also the stockholders, met at least annually to discuss the business. These meetings were informal - to such an extent that Mr. Fauci was not aware that the were meetings in any formal sense of the corporation. Meetings of closely held businesses are frequently informal and often not documented by written minutes. The minutes look like those prepared by a small businessman who was not a lawyer. On balance, Trident documented its corporate actions to a greater degree than many other small businesses organized as closely-held corporations.

The degree of informality manifested in Trident's records is typical of many closely held corporations. It is certainly the case that some closely held corporations have more detailed minute books and are timely in most if not all corporate filings. However, many closely held corporations have no minute book, no stock certificates, and no minutes.

**Corporate Filings and Annual Reports**. It is my opinion, within a reasonable degree of certainty, that Trident's actions with respect to corporate filings and annual reports are consistent with those of similarly situated closely held corporations. Trident filed its Articles of Incorporation in North Carolina and they were accepted for filing on August 28, 2003. The Secretary of State confirmed that the corporation continued to exist as recently as July 8, 2010. This is consistent with the basic requirement for corporate existence.

Trident did not file annual reports for at least five years. However, based on the Notice from the Secretary of State's office, this did not result in termination or dissolution under North Carolina law. In response to the Notice, Trident did what other small businesses have done - it filed its annual reports. The Secretary of State confirmed the corporate existence a few months thereafter. Although not the best practice, it is not unusual for small, closely held corporations to annual report filing deadlines. They are sometimes terminated by operation of law for failure to timely file. Sometimes, they act to reinstate their corporate existence as provided by local law. There is no evidence that Trident's corporate existence was ever terminated.

**Bank Accounts**: It is my opinion, within a reasonable degree of certainty, that Trident's actions with respect to separating corporate and personal finances are consistent with those of similarly situated closely held corporations. Trident opened a corporate bank account. This was discussed at the first director's meeting. According to Mr. Hillenburg, all funds received by the corporation were deposited into the corporate bank account, including the checks received from Airtronic. In addition, based on the information provided me, I have assumed that only corporate expenses were paid from the account. Thus, Trident maintained appropriate separation between the funds and expenses of the corporation and the funds and expenses of its shareholders, directors and officers.

**Tax Returns**. Although far from best practice, Trident did not file income tax returns until July 2010, when returns for 2003 through 2009 were prepared and filed by a CPA in North Carolina. It had elected Subchapter S status under the Internal Revenue Code, effective



August 28, 2003. Consequently, Trident filed Form 1120S, which is an information return and any net income of the corporation itself would not have not subject to federal income taxes at the corporate level. Any income or loss would have passed through to the shareholders. Trident incurred expenses from the time of its formation, but did not realize any income until 2008. It is not unusual for small, closely held corporations to fall behind on tax filings, even when they have substantial ongoing operations and sales. The fact that Trident did not file its tax returns on a timely basis may raise tax compliance issues between it and the Internal Revenue Service and North Carolina tax authorities. However, it does not change my opinion, within a reasonable degree of certainty, that the corporate actions of Trident are generally consistent with the actions of similarly situated closely held corporations with regard to corporate formalities, capitalization, bank accounts, corporate filings and annual reports, tax returns and other corporate actions of closely held corporations.

**Other**: I have not created any exhibits to summarize my opinion. Only the documents listed in Exhibit 1 might be used as exhibits to support my opinion.

I have attached my curriculum vitae (Exhibit 3) and a brief biography (Exhibit 4).

I have not testified as an expert witness at trial or by deposition in the past four years.

My fee is $400 per hour for time spent on this matter, whether in study or time testifying. You have made a $5,000 deposit in this regard.

## Index

1. Alan Briggs' letter of August 1, 2010 with instructions re assumed facts

2. Complaint

3. First Amended Counterclaim

4. Counter-Defendants' Motion to Dismiss Airtronic's First Amended Counterclaim

5. Counter-Defendants' Memorandum Supporting Their Motion to Dismiss
   - Ex. A: Fauci Declaration
   - Ex. B: Mendenhall Declaration

6. Defendant's Opposition to Counter-Defendants Motion to Dismiss
   - Ex. 1: NC Notice of Grounds for Administrative Dismissal
   - Ex. 2: Deposition Transcript Excerpts - Fauci
   - Ex. 3: First Amended Counterclaim
   - Ex. 4: Deposition Transcript Excerpts - Mendenhall
   - Ex. 6: Emails between Hillenburg and Mendenhall
   - Ex. 7: Trident/Airtronic Agreement
   - Ex. 8: Airtronic's checks to Trident

7. Rebuttal Memorandum in support of Motion to Dismiss
   - Ex. 1: Hillenburg Declaration
   - Ex. 1A: Articles of Incorporation; Minutes of Meetings; Bylaws; Face of Stock Certificate #s 1, 2 & 3; Stock Transfer Ledger
   - Ex. 1B: Email Walter to Hillenburg
   - Ex. 1C: Trident Annual Reports
   - Ex. 1D: Certificate of Existence, dated 7/8/10; Certified Copy of Articles of Incorporation, dated 7/8/10, as filed 8/28/03
   - Ex. 2: Copy of Rosario case opinion

8. Trident's Tax Returns


EXHIBIT 1

| | | SQUIRE, SANDERS & DEMPSEY L.L.P. |
|---|---|---|
| SQUIRE SANDERS | LEGAL COUNSEL WORLDWIDE | Suite 500<br>1201 Pennsylvania Avenue, N.W.<br>Washington, DC 20004<br><br>Office: +1.202.626.6600<br>Fax:    +1.202.626.6780 |

Direct Dial: +1.202.626.6702
abriggs@ssd.com

August 1, 2010

VIA E-MAIL

Leo Fisher, Esq.
Bean, Kinney & Korman
2300 Wilson Blvd., Suite 700
Arlington, Va. 22201

Re:   **Trident v. Airtronics**

Dear Mr. Fisher:

This will confirm our meeting and discussion on July 30, 2010. I would like you to serve as an expert in the above case and render opinions with regard to Airtronic's counterclaim allegations seeking to pierce the corporate veil of Trident and hold Trident's officers' and shareholders' personally responsible for the liabilities of Trident.

Specifically, I have provided you certain material relating to this. In particular I have provided you the First Amended Counterclaim of Airtronic and I have provided you the motion and memo to dismiss filed on behalf of Messrs. Hillenburg, Fauci and Mendenhall and the memo contra and rebuttal memo and the attachments to those memos. These documents set forth the basic facts. For the purpose of your opinion you should assume the facts set forth in Mr. Hillenburg's Declaration are true. In addition I will have forwarded to you the tax returns filed for Trident. In addition you should assume that Mr. Hillenburg purchased a corporate minute book and the pages that are attached to his Declaration are the pages out of that minute book that he has filled out and you should assume the minutes and stock certificate in the documents you have were prepared contemporaneously with events reported therein. In connection therewith you should assume that all funds received by Trident were deposited in the corporate bank account and all funds in that account were used for corporate purposes and not personal purposes.

You should further assume that Mr. Robert Walter, the president of Airtronic, was fully aware of the closely held nature of Trident at all relevant times and knew it was a small corporation owned by Messrs. Hillenburg, Fauci and Mendenhall. I also forward to you along with this letter a copy of the Complaint filed by Trident. You should assume the facts alleged therein are true.

BEIJING • BRATISLAVA • BRUSSELS • BUDAPEST • CARACAS • CINCINNATI • CLEVELAND • COLUMBUS • FRANKFURT • HONG KONG • HOUSTON • KYIV
LONDON • LOS ANGELES • MIAMI • MOSCOW • NEW YORK • PALO ALTO • PHOENIX • PRAGUE • RIO DE JANEIRO • SAN FRANCISCO • SANTO DOMINGO
SÃO PAULO • SHANGHAI • TALLAHASSEE • TAMPA • TOKYO • TYSONS CORNER • WARSAW • WASHINGTON DC • WEST PALM BEACH
INDEPENDENT NETWORK FIRMS: BEIRUT • BOGOTÁ • BUCHAREST • BUENOS AIRES • LA PAZ • LIMA • PANAMÁ • RIYADH • S[...]
www.ssd.com

**EXHIBIT 2**

August 1, 2010                                          SQUIRE, SANDERS & DEMPSEY L.L.P.
Page 2

    Based on these facts I would like you to advise me your opinion within a reasonable degree of certainty as to whether or not the corporate actions of Trident are generally consistent with the actions of similarly situated closely held corporations with regard to corporate formalities, capitalization, bank accounts, corporate filings and annual reports, tax returns and the others corporate actions of closely held corporations that you see reflected here. Your written report should conform to the requirements of FRCP 26 and include the information referenced therein.

    If you have any questions feel free to call me. Thanks.

                                               Sincerely,

                                               Squire, Sanders & Dempsey L.L.P.

                                               *Alan L. Briggs*

                                               Alan L. Briggs

ALB/SLB

## LEO S. FISHER

| | |
|---|---|
| <u>Employment History</u>: | Shareholder, Bean, Kinney & Korman, P.C., 2300 Wilson Boulevard, 7th Floor, Arlington, VA 22201 (1990 to present) (Managing Shareholder - 2001 to present) |
| | Partner, Babirak & Fisher (1983 to 1989) |
| | Law Offices of Leo S. Fisher (1980 to 1983; 1989 to 1990) |
| | Associate, Billig, Sher & Jones, P.C. (1980) |
| | Law Clerk, Billig, Sher & Jones, P.C. (1978 to 1980) |
| | Transportation Specialist, Rail Services Planning Office (1977 to 1978) |
| | Transportation Analyst, Federal Railroad Administration (1975 to 1977) |
| <u>Bar Affiliations</u>: | District of Columbia -   1980<br>Virginia -                        1981<br>Maryland -                   1986 |
| <u>Federal Court Admissions</u>: | U.S. Supreme Court; U.S. Courts of Appeal for the 4th Circuit, D.C. Circuit & Federal Circuit; U.S. District Courts for the Eastern District of Virginia, District of Columbia and Maryland |
| <u>Areas of Practice</u>: | Business, commercial and real estate litigation in state and federal courts; arbitration; corporate and administrative law |
| <u>Education</u>: | George Washington University, National Law Center, J.D. (with honors), 1980 |
| | Oberlin College, B.A. (1975) |



EXHIBIT 3

# BK&K BEAN KINNEY & KORMAN PC
## ATTORNEYS



2300 Wilson Boulevard, 7th Floor, Arlington, VA 22201

703.525.4000

lfisher@beankinney.com

**PRACTICE AREA FOCUS**

- Employment Law & Litigation, Business Litigation, Securities Fraud, Real Estate Litigation, Construction Litigation & Arbitration, Corporate Law, Trademark

**EDUCATION**

- George Washington University, National Law Center, J.D. (with honors), 1980
- Oberlin College, B.A., 1975

**BAR ADMISSIONS**

- VA, DC & MD Bars
- U.S. Supreme Court

**AWARDS & HONORS**

- *Virginia Super Lawyers* - Employment Defense
- *Washington, DC Super Lawyers* - Employment Defense
- Litigation Counsel of America, Member

## LEO S. FISHER

Mr. Fisher is the Managing Shareholder of Bean, Kinney & Korman, directing the day-to-day operations and overall management of the 39-lawyer law firm. In this role, he is responsible for developing and implementing the firm's strategic plan and leads the firm's attorney recruiting efforts.

Mr. Fisher maintains an active law practice spanning over 25 years of experience representing businesses and their principals in business and employment litigation and providing advice on general corporate matters.

His litigation practice is diverse with a particular focus on employment defense disputes, including the defense of employers from discrimination and wrongful discharge claims; covenants not to compete and other restrictive covenants; fiduciary duties of officers and directors; misappropriation of corporate opportunities; and the protection of proprietary information and trade secrets.

Mr. Fisher also has notable experience defending several high-profile corporations and audit firms against securities fraud class actions.

Mr. Fisher's litigation experience extends to disputes involving real estate ownership, development and land-use. He also represents owners, general contractors and subcontractors in construction litigation and arbitration.

Mr. Fisher also has an active trademark practice involving both the prosecution of trademark applications before the U.S. Patent & Trademark Office and infringement litigation in state and federal courts.

In his corporate counseling practice, Mr. Fisher counsels both large corporations and start-ups/growing companies on business formation strategies, financing plans, business contracts and commercial transactions, and general employment law matters such as employment policies and procedures.

For the last 2 years, Mr. Fisher has been honored both as one of Virginia's "Super Lawyers" and DC's "Super Lawyers" for his work in employment defense matters.



EXHIBIT 4