**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| TRIDENT ENTERPRISES, LTD., et al. | ) | |
| | ) | |
| **Plaintiff/Counter-** | ) | |
| **Defendant** | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:09-cv-1355 |
| | ) | |
| AIRTRONIC USA, INC. | ) | |
| | ) | |
| **Defendant/Counter-** | ) | |
| **Plaintiff** | | |

**DEFENDANT'S SUPPLEMENTAL MOTION TO STRIKE EXPERT**
**LEO FISHER'S TESTIMONY AND MEMORANDUM IN SUPPORT**

Comes now, Defendant, Counter-Claimant, Airtronic USA, Inc. ("Airtronic"), by

and through its undersigned counsel, and moves this Honorable Court to exclude the

testimony (including an expert report) of Leo Fisher.  In support of this Motion, states the

following:

## I.  **Background**

On August 13, 2010, Plaintiff Trident Enterprises, Ltd. ("Trident") and the

individually named Counterclaim Defendants submitted the expert report of Leo Fisher

dated August 9, 2010.  On August 27, 2010, Airtronic took the deposition of Mr. Fisher.

On the same date, Trident and the Counterclaim Defendants designated Mr. Fisher as an

expert witness in their Fed. R. Civ. Proc. 26(a)(3) Pretrial Disclosures.  The deposition

transcript has now been completed and Airtronic has supplemented the Motion to add the

relevant cites in support of its motion.

In his August 9, 2010 report, Mr. Fisher presents himself as an expert on the

workings of closely held corporations by virtue of his thirty years in the private practice

of law.  Mr. Fisher does not describe any additional training and claims his expertise only

by virtue of these representations.  His provided resume and web biography note his

experience and focus in Employment Law and Litigation, Business Litigation, Securities

Fraud, Real Estate Litigation, Construction Litigation and Arbitration, Corporate Law

and Trademarks (See Exhibit 1).  Mr. Fisher's report opines on whether the actions of

Trident and the individual Counterclaim Defendants were "generally consistent with the

actions of similarly situated small businesses organized as closely held corporations with

regard to corporate formalities, capitalization, bank accounts, corporate filings and annual

reports, tax returns and other corporate action of closely held corporations."  Report of L.

Fisher, Exhibit 2.  Mr. Fisher concluded that they were. His testimony differs from his

expert report.

At all times relevant to his inquiry, Trident's corporate existence was governed

under the laws of North Carolina. At his deposition, Mr. Fisher was questioned

extensively about his knowledge of North Carolina law.

## II.  Argument

### a.  Legal Standard

The admissibility of expert witnesses is determined under Fed. R. Evid. 702.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), *Kumho Tires Co., Ltd. v.*

*Michael*, 526 U.S. 137 (1999).  This rule provides that individuals who will testify

concerning specialized knowledge must first be "qualified as an expert by knowledge,

skill, experience, training, or education."  Fed. R. Evid. 702.  The court's role in

determining the admissibility of experts has been described as "gate-keeping" to prevent

testimony that is "both powerful and misleading."  *PBM Products LLC v. Mead Johnson*

*Nutrition Co.*, Civ. No. 3:09-CV-269, 2010 WL 56072 (E.D.Va. Jan. 4, 2010), quoting

*Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 261 (4th Cir. 2005).

Courts exclude opinions based on "belief or speculation" or inferences derived using

invalid methods. *Daubert*, 509 U.S. at 590, 592-93.

       The Supreme Court in *Daubert* set forth five non-exhaustive principles for

assessing the reliability of expert testimony. These are "(1) whether the expert's

technique or theory can be or has been tested; (2) whether the technique or theory has

been subject to peer review and publication; (3) the known or potential rate of error of the

technique or theory when applied; (4) the existence and maintenance of standards and

controls; and (5) whether the technique or theory has been generally accepted in the

scientific community." *Lone Mountain Processing, Inc. v. Bowser-Morner, Inc.*, Civ.

No. 2:00-CV-00093, 2005 WL 1894957 (W.D. Va. Aug. 10, 2005), citing *Daubert*, 509

U.S. at 593-94. The Fourth Circuit warns that no one of the *Daubert* factors is

dispositive and not all might apply to every case. *U.S. v. Barnett*e, 211 F.3d 803, 815 (4th

Cir. 2000).

       The Court in *Kumho Tires* held that similar factors apply to nonscientific expert

testimony, depending on the "particular circumstances of the case." *Kumho Tires*, 526

U.S. at 149. In doing so, while they cannot apply the more clear-cut scientific standard,

Courts are able to ensure the jury hears only relevant and reliable testimony. Regarding

relevancy, the Court must decide if the expert testimony "fits the facts" of the case and is

"sufficiently tied to the facts of the case that it will aid the jury in resolving a factual

dispute." *PMB Products*, citing *U.S. v. Lester*, 254 F.Supp.2d 602, 606 (E.D.Va. 2003).

The party presenting the expert bears the burden of demonstrating that such testimony is relevant and reliable by a preponderance of the evidence.

### b. Analysis

Mr. Fisher should not be permitted to testify as an expert as he is not qualified to do so in this matter.  The First Amended Counterclaim added Samuel Hillenburg, Brian Fauci, and Monty Mendenhall as Counterclaim Defendants and seeks to hold them jointly and severally liable with Trident for the actions ascribed to Trident.  At his deposition, Mr. Fisher admitted that he is not familiar with North Carolina laws regarding corporations,[1] that he does not recall ever having read them and that he is not familiar with case law on holding corporate meetings.[2] ("Generally, I haven't read any case law recently and haven't attempted to … Q: When was the last time you read any case law in this area? A: Some time over the last 30 years. I just don't know." *Id*. at 87.)  He admitted that only about twenty to twenty five percent of his business involves spending time on corporate counseling,[3] and the remainder is litigation.  Finally, concerning his qualifications, Mr. Fisher stated that he has never testified as an expert concerning corporate compliance matters[4] and was only engaged previously as an expert on attorneys fees.

In addition, Mr. Fisher testified that he had never spoken to the officers of Trident[5] ("No, never met them, never talked with them." *Id.* at 27), did not review the complete depositions in this case (he only reviewed excerpts provided by the attorney for

---

[1] See Dep. of L. Fisher, August 27, 2010 (Exhibit 3); 24:14-17; 49:9-17.
[2] *Id.,* 87:1-8.
[3] *Id.*, 12:21-13:2.
[4] *Id.*, 8:6-9.
[5] *Id.*, 27:14-17; 40:20-41:2; 54:4-7.

Trident),[6] did not review the original minutes to determine when they may have been

recorded[7] (Q: Did you try to determine whether it was all the same ink that the minutes

were written in …? A: No, I didn't." *Id.* at 41.),  did not review the North Carolina

Business Act[8] and therefore could not determine if annual meetings were properly called

("Q: It's your testimony that you did not review the North Carolina Business Corporation

Act in connection with the preparation of your opinion? A: That's correct."), did not talk

to Mr. Fauci (Trident's Vice President) to determine why Mr. Fauci testified he was not

aware of the alleged annual meetings,[9] and was not familiar with the waiver provision of

the North Carolina Business Act.

     After reviewing the relevant North Carolina Business Act, Mr. Fisher testified

that Trident did not have a properly registered agent[10] ("Well he would not be qualified if

his residence is not in the state.") and that the company could be dissolved within sixty

days as a result of not having a properly registered agent.[11] Mr. Fisher also testified that

Trident is exposed to IRS and North Carolina investigations for failure to file tax returns

for five years[12] ("I would not advise [clients] to do that." (not file tax returns for five

years) *Id.* at 48.).  In contradiction to his export report, Mr. Fisher testified that the failure

to file was not consistent with similar small businesses[13]("It is a small percentage."). Mr.

Fisher acknowledged he was aware of the fact that Trident was using Mr. Hillenburg's

personal mail box for Trident mail.[14]

---

[6] *Id.*, 26:3-13.
[7] *Id.*, 41:3-11; 61:16-19.
[8] *Id.*, 63:4-8.
[9] *Id.*, 53:2-5.
[10] *Id.*, 92:1-11.
[11] *Id.*, 92:12-93:15.
[12] *Id.*, 47:12-15; 48:3-13; 53:18-54:3.
[13] *Id.*, 93: 3-6.
[14] *Id.*, 55:19-56:12.

Mr. Fisher's testimony should be excluded because it is not reliable. Mr. Fisher's opinions are based on speculation and they were not prepared using valid methods. Mr. Fisher's report was based in large part on the items, facts, and assumptions presented to him by Counsel to Trident. As noted above, during his deposition, Mr. Fisher directly stated that he had not reviewed the pertinent law relating to his opinion, nor was he familiar with leading cases in the area.

The documents he reviewed were limited to the Complaint and First Amended Counterclaim, the Counter-Defendant's Motion to Dismiss Airtronic's First Amended Counterclaim and supporting declarations, Airtronic's Opposition to that motion and supporting documents, the Rebuttal to that opposition, and Trident's tax returns. Report of L. Fisher, Exhibit 2. He testified at deposition that he did not: review all emails; speak to corporate officers; review the original minutes of the Board of Directors meetings; or review the full depositions taken in this matter other than the Aug. 18, 2010 deposition of Samuel Hillenburg. Particularly, regarding e-mails and notices regarding corporate meetings he stated:

> MR. JACOBOVITZ: Are you aware that probably a thousand e-mails have been exchanged in this case?
>
> MR. FISHER: I don't know how many if any.
>
> Q: When you say you're not aware of any objections by any of the officers, you haven't reviewed the e-mails in this case, have you?
>
> A: That's correct.
>
> Q: And you haven't been privy to any of the phone conversations that took place in this case; is that correct?
>
> A: That's correct, too.

> Q: So an officer could have been objecting to how meetings were being held or not being appraised of meetings and you would have no idea about that, would you?
>
> A: That is possible.

Dep. of L. Fisher, 82:17-83:10.

After reviewing additional documents and statutes during his depositions, Mr. Fisher stated that Trident did not properly notice their meetings under the North Carolina Business Act ("Q: In connection with the preparation of your opinion, did you review any documents or other information that would lead you to believe that the meetings held as board meetings were regular meetings within the meaning of the statute? A: I don't think so." *Id*. at 76:20-77:4).  After examining the minutes of the Board of Directors meetings, he said he saw no indication that any waiver of the notice requirements regarding such meetings had occurred.  He testified that Trident did not have a registered agent in that State, which could subject it to dissolution within 60 days if the State were notified.  All of these facts were testified to after Mr. Fisher was provided with the Act that he failed to review when rendering his Expert report.

Mr. Fisher's testimony should be excluded as his conclusions at deposition differ from his report, indicating its unreliability.  In his report, Mr. Fisher stated, concerning Trident tax returns, that "[t]he fact that Trident did not file its tax returns on a timely basis may raise tax compliance issues between it and the Internal Revenue Service and North Carolina tax authorities.  However, it does not change my opinion, within a reasonable degree of certainty, that the corporate actions of Trident are generally consistent with the actions of similarly situated closely held corporations...."  Report of L. Fisher, 6.  At his deposition, he said as follows:

MR JACOBOVITZ:  In fact it's illegal to not file tax returns for five years; isn't that correct?

MR. FISHER:  I'm not a criminal lawyer but I think that's true.

Q: And based on your experience it's illegal in the state law to not file tax returns; isn't that correct?

A: I think that's partially true but I'm not a criminal lawyer.

Q: But yet your opinion is they're consistent with what other small businesses do, they being Trident, by not filing tax returns?

A: It happens and they file the returns late and sometimes they don't file until somebody points out an issue, then they go back and they back file or they amend.

Q: But you would never advise your clients to not file tax returns for five years, isn't that correct?

A: I would not advise them to do that.

Dep. of L. Fisher, 47:16-48:13.

In applying similar principles to nonscientific expert testimony based on the facts of this case, it is clear that Mr. Fisher is not specially trained or educated in corporate matters to a degree that would qualify him as an expert, was not given a complete set of facts and documents, and intends to offer testimony that is inherently unreliable.  While there is no standard for what attorneys will consider before rendering such an opinion, the incompleteness of Mr. Fisher's relevant legal knowledge and insufficient knowledge of the facts should cause the Court to exclude his testimony.

### III. Conclusion

Mr. Fisher's testimony is not tied to the facts of the case and is based on incomplete knowledge of both the facts and law.  It is not relevant and not reliable.  For

these reasons, Airtronic respectfully requests that the court exclude the testimony and

report of Mr. Leo Fisher as an expert witness in this matter.


Dated:  September 4, 2010          Respectfully submitted,

                                   McCarthy Sweeney & Harkaway, P.C.


                                   /s/ Gabriel D. Soll_____
                                   Gabriel D. Soll (VSB No. 66734)
                                   Jeffrey S. Jacobovitz (admitted *pro hac vice*)
                                   Attorneys for Airtronic USA, Inc.
                                   1825 K Street, N.W., Suite 700
                                   Washington, D.C. 20006
                                   (202)775-5560 (tel)
                                   (202) 775-5574 (fax)
                                   gsoll@mshpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2010, a copy of the foregoing Defendant's Supplemental Motion to Strike Expert Testimony was filed electronically through the Court's CM/ECF system, which notifies those noted below of its service. A courtesy copy has also been sent via first class mail to:

Alan Briggs, Esq. (abriggs@ssd.com)
Rebecca Worthington, Esq. (rworthington@ssd.com)
Squire, Sanders & Dempsey, L.L.P.
1201 Pennsylvania Ave., N.W.
Suite 500
Washington, D.C. 20004

Counsel to Trident Enterprises, Ltd.


/s/ Gabriel D. Soll_____
Gabriel D. Soll, Esq.

1