UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **TRIDENT ENTERPRISES, LTD., et al,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **Counter-Defendant;** | ) | |
| | ) | Civil Action No.  1:09-cv-1355 |
| **v.** | ) | CMH/TCB |
| | ) | |
| **AIRTRONIC USA, INC.** | ) | |
| | ) | |
| **Defendant,** | ) | |
| **Counter-Plaintiff.** | ) | |

**PLAINTIFF TRIDENT'S MEMORANDUM IN OPPOSITION TO
AIRTRONIC'S MOTION TO STRIKE**

Mr. Fisher's testimony is admissible under Rule 702 of the Federal Rules of Evidence as it is reliable and based upon his experience consulting for small, closely-held corporations that are similar to Plaintiff Trident.  Such knowledge is not within the ordinary ken of a jury.  Plaintiff Trident and the individual Counter-Defendants respectfully request that Defendant Airtronic's Motion to Strike Expert Leo Fisher's Testimony be DENIED.  In support of this Opposition, Plaintiff Trident and the individual Counter-Defendants state the following:

**I.     Background On the Law Regarding Admissibility of Expert Testimony**

Plaintiff Trident and the three individual Counter-Defendants seek to introduce expert testimony on whether or not Trident followed certain corporate formalities as compared to other similarly situated corporations. (See Parts II and III for a fuller discussion on why such testimony is relevant, and why Mr. Fisher's opinion may be properly admitted.)  Expert testimony should be permitted if it would "assist the trier of fact to understand the evidence or to determine a fact

1

in issue." Fed. R. of Evid. 702.  Expert testimony is "presumed to be helpful unless it concerns matters within the everyday knowledge or experience of a lay juror." *Phoenix Renovation Corp. v. Rodriguez*, 439 F. Supp. 2d 510, 523 (E.D. Va. 2006) (quoting *Kopf v. Syms*, 993 F.2d 374, 377 (4th Cir. 1993)).

Defendant Airtronic, seeking to exclude Mr. Fisher's testimony, has a high burden to meet.  *See Rhodes v. E.I. Du Pont de Nemours & Co.*, 558 F. Supp. 2d 660, 664 (S.D. W. Va. 2008) ("[T]he party seeking disqualification bears a high standard of proof to show that disqualification is warranted.") (citations omitted).   Cases in which a federal court grants disqualification "are rare because courts are generally reluctant to disqualify expert witnesses, especially those . . . who possess useful specialized knowledge." *Id.* (citations omitted). Defendant Airtronic frames its Motion to Strike as one concerned with the admissibility of Mr. Fisher's testimony, but all of its arguments actually go to the weight of Mr. Fisher's testimony, not its admissibility.  While the Court may decide whether Mr. Fisher's testimony is admissible, it is up to the jury to determine what weight, if any, to give his testimony.  *See, e.g., PBM Prods., LLC v. Mead Johnson Nutrition Co.*, No. 3:09-CV-269, 2010 U.S. Dist. LEXIS 177, at *25 (E.D. Va. Jan. 4, 2010) ("[A]lleged weaknesses may form the bases of arguments to the jury concerning the weight to give the testimony, but will not result in the testimony's exclusion."); *Samuel v. Ford Motor Co.*, 112 F. Supp. 2d 460, 469 (D. Md. 2000).

Mr. Fisher's expert testimony, as will be described more fully below, is based upon over thirty years of experience advising corporations much like Trident.  Nothing in the language of Federal Rule of Evidence 702 suggests that experience alone may not provide a sufficient foundation for expert testimony; "[t]o the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702 (Advisory

Committee Note. As Mr. Fisher has significant experience in dealing with small, closely-held corporations similar to Trident, his testimony should not be excluded.

**II.   Mr. Fisher's Significant Experience Consulting and Representing Small, Closely-Held Corporations Provides the Foundation for Relevant, Reliable, and Admissible Expert Testimony**

   **A.   Mr. Fisher's Experience**

Mr. Fisher is the Managing Shareholder of Bean, Kinney & Korman, an Arlington law firm, and has held that position since 2001. (Fisher Report 11, attached as Exhibit 2 to Def. Airtronic's Supplemental Mot. to Strike, hereinafter "Fisher Report".) He has been engaged continuously in the practice of law for more than thirty years. (Fisher Report 1.) A "significant portion" of his practice over those thirty years has involved the representation of small businesses organized as corporations and owned by a limited number of shareholders. (Id.) He has advised some clients on entity selection, and advised other clients after they came to him already having formed a corporation but in need of counsel. (Id.)

Throughout these representations he has been "called on repeatedly to review and advise regarding the corporation's corporate records, including minute books, corporate filings . . . separation of corporate and personal finances, and a variety of tax issues." (Id. at 2.) He has also addressed "questions of corporate existence and piercing the corporate veil." (Id.) Because of this experience, Mr. Fisher has seen first-hand that:

> "[T]here is a broad range within which small business corporations undertake and document their corporate actions and capitalize their businesses. Some are more attentive that others to deadlines for filing annual reports or the like; and, as a result, it is not unusual for these corporations to pay late fees for late filings or to need to seek reinstatement of their corporate existence. Many have no minute book or a minute book with virtually no content. A not inconsiderable number of these corporations have conducted their corporate affairs with less than best practices."

3

(Fisher Report 2.)

### B.   Mr. Fisher's Expert Opinion and Its Relevance to This Case

Mr. Fisher was hired by the Plaintiff and Counter-Defendants to provide an opinion regarding whether the practices of Trident are comparable to other small, closely held corporations. (Fisher Dep. Tr. 24, attached as Exhibit A; Fisher Report 1.) Piercing the corporate veil in Virginia requires proof that the corporation was used to disguise some legal wrong, and the plaintiff (here, Defendant Airtronic) must first establish that "the corporate entity was the alter ego, alias, stooge or dummy of the individual sought to be personally charged." *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir. 1992) (quoting *Cheatle v. Rudd's Swimming Pool Supply Co.*, 360 S.E.2d 828, 831 (Va. 1987)). When determining whether the corporate was an alter ego, it is proper to examine whether the individual officers or shareholders observed corporate formalities, such as keeping corporate records or paying dividends. *Id.*

The Fourth Circuit has recognized the fact that small businesses-- ones much like Trident-- often act informally. *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1048 (4th Cir. 1988). Mr. Fisher is able to explain to the trier of fact that it is not unusual for small corporations to act informally. (Fisher Report 2: "A not inconsiderable number of these corporations [that he has represented or consulted] have conducted their corporate affairs with less than best practices.") He is of the opinion that "the corporate actions of Trident are generally consistent with the actions of similarly situated closely held corporations with regard to corporate formalities, capitalization, bank accounts, corporate filings and annual reports, tax returns and other corporate actions of closely held corporations." (Id.)

Mr. Fisher's expert testimony is relevant since Defendant Airtronic seeks to pierce Trident's corporate veil by arguing that Trident did not properly operate as a corporation. Defendant Airtronic amended its Counterclaim to add the three individual Counter-Defendants when it learned that, allegedly, Trident "did not maintain or file any corporate records, was undercapitalized, did not keep corporate formalities, faced dissolution in North Carolina and that each individual named has used the corporate form as a shield in committing fraud and gaining an unfair advantage." (Def. Airtronic Mot. to File an Am. Countercl. 3.) Based on his experience, Mr. Fisher will be able to explain to the trier of fact that Trident actually did follow corporate formalities in a manner similar to other small businesses. First, Mr. Fisher is of the opinion that "Trident's capitalization was consistent with that of similarly situated closely held corporation," and that many corporations are formed with much less capital. (Fisher Report 4.) The stock certificates Trident issued for "sweat equity" is "a common practice among closely held corporations." (Id.) Second, regarding Trident's minute book and related formalities, Mr. Fisher is of the opinion that Trident's minutes book was "consistent with or exceeded that of similarly situated closely held corporations." (Id. at 4-5.) Mr. Fisher will be able to testify to the fact that "[m]eetings of closely held businesses are frequently informal and often not documented by written minutes." (Id. at 5.) From Mr. Fisher's testimony the trier of fact will understand that "many closely held corporations have no minute book, no stock certificates, and no minutes," but that "Trident documented its corporate actions to a greater degree than many other small businesses organized as closely-held corporations." (Id.) Third, Mr. Fisher is of the opinion that "Trident's actions with respect to corporate filings and annual reports were consistent with those of similarly situated closely held corporations." (Id.) Fourth, Mr. Fisher is of the opinion that Trident's actions "with respect to separating corporate and personal finances

are consistent with those of similarly situated closely held corporations." (Id.)  Finally, Mr. Fisher is of the opinion that, although it is not the best practice, the fact that Trident fell behind on its tax filings does not indicate that it acted contrary to other similarly situated businesses. (Id. at 5-6.)  Mr. Fisher stated in his report that "[i]t is not unusual for small, closely held corporations to fall behind on tax filings, even when they have substantial ongoing operations and sales." (Id. at 6.)  Clearly, Mr. Fisher is able to provide expert testimony that will help the trier of fact determine whether or not Trident observed corporate formalities.

In conclusion, Mr. Fisher has significant experience that will allow him to provide expert testimony regarding corporate formalities for small businesses like Trident.  This is information that is not ordinarily within a typical juror's knowledge base.  The testimony is relevant since whether or not Trident kept corporate formalities may very well inform the trier of fact's decision as to whether Trident's corporate veil should be pierced.

### III. Mr. Fisher Will Be Providing An Expert Opinion On Corporate Formalities-- Not A Legal Opinion

Mr. Fisher was not asked to provide an opinion on whether Airtronic should be allowed to pierce the corporate veil (Fisher Dep. Tr. 97), or regarding other elements of piercing the corporate veil under Virginia law, but rather to address the more discrete question of whether corporate formalities were followed in a manner expected of small, closely-held corporations. Mr. Fisher is not providing a legal opinion. (Fisher Dep. Tr. 50 ("I'm expressing an opinion about the practices of small, closely-held corporate on these range of corporate actions.  I'm not expressing an opinion about what the law [of North Carolina] is.").)  The fact that Mr. Fisher may be unfamiliar with North Carolina law is irrelevant.  Mr. Fisher is only testifying to whether Trident followed procedures that were comparable to those followed in other small, closely-held corporations.  Mr. Fisher certainly is qualified to testify as an expert witness on this issue.

A practicing attorney for over thirty years, he has spent "a significant portion" of his practice representing "small businesses organized as corporations and owned by a limited number of shareholders." (Fisher Report 1.) Throughout these representations he has been repeatedly called upon to review clients' corporate formalities. (Fisher Report 2.) Defendant Airtronic would like this Court to strike Mr. Fisher's testimony since "only" about twenty to twenty-five percent of Mr. Fisher's business involves corporate counseling. (Supplemental Mot. to Strike 4.) A quarter of one's workload over thirty years cannot be seriously be characterized, much as Defendant Airtronic would like to, as inconsequential to the question of whether such an individual is qualified to provide expert testimony. Mr. Fisher estimates that he has represented numerous corporations comparable to Trident. (Fisher Dep. Tr. 14: "certainly multi-dozens, maybe more than 100".) Mr. Fisher also stated that he could not necessarily put a percentage on how many businesses he has represented that are comparable in size to Trident because much of the work he does overlaps different issues. (Fisher Dep. Tr. 14-15, 17.) Defendant Airtronic tries to pigeon-hole Mr. Fisher into the twenty to twenty-five percentage, but actually Mr. Fisher said he could not provide an exact percentage:

> MR. FISHER: What I'm saying is a percentage is a little difficult and I think you're misreading the percentages because some of that overlaps. I'm counseling small businesses on trademark matters. I'm counseling them with respect to claims that they may have or not. I'm also directly involved in some litigation. Over time some of my experience with these kinds of clients has to do with situations where they come and first see me, for example, long after they were initially incorporated and now something is going on, maybe they've been sued, maybe they have some dispute going on.
> And in the course of that I say to them well, can you get me the corporate documents. And so I'm having a little bit of trouble with the percentage because I don't think of it that way[.] . . .

(Fisher Dep. Tr. 17.)

7

Therefore it is likely that Mr. Fisher spends more than twenty-five percent of his time consulting and/or representing small, closely-held businesses and familiarizing himself with the common practices and formalities of such businesses.  Furthermore, the fact that the majority of Mr. Fisher's work may or may not involve representing small businesses does not mean that his testimony is not relevant and reliable.  *See, e.g., PBM Prods., LLC*, 2010 U.S. Dist. LEXIS 177 at *31 (expert testimony deemed admissible even though the witness's opinions were based on experiences that were not the "primary focus of his work").

Defendant Airtronic also attempts to characterize Mr. Fisher's deposition testimony as contrary to what he provided in his report.  While Mr. Fisher did testify that he would never advise clients to not file tax returns for five years (Fisher Dep. Tr. 48), he also testified that he has had clients "all over the map in terms of what they have done on including tax returns." (Fisher Dep. Tr. 47.)  Whether Mr. Fisher would provide certain legal advice to his own personal clients is irrelevant to the issue of whether the corporate actions of Trident were generally consistent with the actions of similarly situated closely-held corporations.  Finally, Defendant Airtronic is also concerned that Mr. Fisher has never before testified as an expert concerning compliance matters.  (Supplemental Mot. to Strike 4.)  The court in *PBM Prods., LLC* found an expert witness's testimony admissible even though he had not served as an expert witness in more than twenty years.  2010 U.S. Dist. LEXIS 177 at *31. The fact that Mr. Fisher has not served as an expert witness regarding corporate formalities is by no means dispositive.

**Conclusion**

Mr. Fisher should be permitted to testify as an expert witness as his specialized knowledge will assist the trier of fact to understand the evidence and determine a fact in issue. He has had significant experience consulting and representing corporations that are similar to

Trident, and is able to provide reliable testimony. As Airtronic is seeking to pierce Trident's corporate veil, Mr. Fisher's expert testimony on corporate formalities is extremely relevant. Defendant Airtronic has not met the high standard required for disqualifying an expert witness, and its Motion to Strike Expert Leo Fisher's Testimony should be denied.

Date submitted: Sept. 8, 2010                                  Respectfully,

                                                               /s/ Rebecca A Worthington

                                                               Alan L. Briggs, (VSB No. 38667)
                                                               Rebecca A. Worthington (VSB No. 79232)
                                                               SQUIRE, SANDERS & DEMPSEY L.L.P.
                                                               1201 Pennsylvania Avenue, NW
                                                               Suite 500
                                                               Washington, DC 20004
                                                               Phone:  (202) 626-6600
                                                               Facsimile: (202) 626-6780

                                                               Counsel for Trident Enterprises, Ltd.

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Memorandum in Opposition to Defendant's Motion to Strike was filed electronically on this 8th day of September, 2010 with the Court using the CM/ECF system, which notifies those below that such filing has been made.

    Gabriel D. Soll
    Jeffrey S. Jacobovitz
    Attorneys for Defendant
    MCCARTHY, SWEENEY & HARKAWAY, PC
    1825 K Street, N.W.
    Suite 700
    Washington, D.C. 20006

                                                      /s/ Rebecca A . Worthington
                                                      Rebecca A. Worthington