# EXHIBIT A

1   A.   It varies over time. I think of

2   Trident as looking at the history here from 2003

3   forward as starting as a start up. I guess

4   they've been around now for about seven years, I

5   think of that as a very small business. I'm not

6   sure I can tell you percentage.

7       I think over time I have probably

8   represented those businesses or the principles in

9   those businesses, certainly multi-dozens, may be

10  more than 100, may be more than that, I don't know

11  exactly.

12      Q.   Well, my question was -- let me

13  backtrack. You said you represent or counsel

14  businesses about 20 percent of your practice; is

15  that correct?

16      A.   I think that's probably about right.

17  It varies a lot over time.

18      Q.   So for the year 2010, what percentage

19  of that 20 percent were businesses the size of

20  Trident as they currently are?

21      A.   I don't know if I can put a percentage

22  on it. It's just what I do. It's -- I'm engaged

Fisher, Leo - Vol. I  8/27/2010  2:24:00 PM

1  in that kind of counseling a lot. I can't tell

2  you that I have made like a study of the

3  percentage break down. Some of the things that

4  we're talking about, trademark issues are

5  sometimes for very small clients. In other words,

6  some that overlaps.

7      Q. I'm specifically talking about the

8  type of opinion you're engaged to render in this

9  case for that size business in that area. What

10  percentage of your practice is that?

11      MR. BRIGGS: Objection. Are you now

12  asking about 2010 again?

13      MR. JACOBOVITZ: That's correct.

14      A. I have a hard time putting a

15  percentage on it. I have a number of clients that

16  are small businesses that I'm familiar with their

17  minute books, I'm familiar with what they're doing

18  in terms of, you know, their filings. I'm the

19  registered agent for, I don't know you could check

20  with the Virginia State Corporation Commission but

21  I would guess I'm registered agent for 20, 30 I'm

22  not sure. I don't have a count. So I'm seeing

Fisher, Leo - Vol. I 8/27/2010 2:24:00 PM

```
1    answer.
2        A.   What I'm saying is a percentage is a
3    little difficult and I think you're misreading the
4    percentages because some of that overlaps.  I'm
5    counseling small businesses on trademark matters.
6    I'm counseling them with respect to claims that
7    they may have or not.  I'm also directly involved
8    in some litigation.  Over time some of my
9    experience with these kinds of clients has to do
10   with situations where they come and first see me,
11   for example, long after they were initially
12   incorporated and now something is going on, maybe
13   they've been sued, maybe they have some dispute
14   going on.
15       And in the course of that I say to them
16   well, can you get me the corporate documents.  And
17   so I'm having a little bit of trouble with the
18   percentage because I don't think of it that way
19   but what I can tell you as I say, as I am trying
20   to get a grip on what you're trying to ask, I'm
21   registered agent for a lot of these businesses.
22   Not all -- by the way, I'm not registered agent
```

1      A.   No.

2      Q.   What is the hourly rate you are

3    charging in this case?

4      A.   $400.00 an hour.

5      Q.   What were you asked to provide an

6    opinion on?

7      A.   Essentially to compare the practices

8    of Trident with respect to various corporate

9    actions to what I have seen and believed to be the

10   case with other small closely-held corporations.

11     Q.   And were these corporations located in

12   Virginia?

13     A.   Most would have been.

14     Q.   Have you ever been engaged to

15   represent a company that was incorporated in North

16   Carolina?

17     A.   Not that I recall.

18     Q.   What did you review before you came to

19   your opinion?

20     A.   The things that were listed in my

21   expert report.

22     Q.   Would it help you if I showed you your

1  MR. BRIGGS: Objection. Go ahead and
2  respond if you can without revealing confidential
3  communications.
4  A. I have had clients that are all over
5  the map in terms of what they have done on
6  including tax returns but the range of issues that
7  are addressed in this.
8  BY MR. JACOBOVITZ:
9  Q. And you don't see anything wrong with
10 not filing tax returns for five years?
11 A. I didn't say that.
12 Q. Do you think it's improper?
13 A. I think it's going to cause them -- if
14 it's a federal return, I think it's going to give
15 them issues with the IRS.
16 Q. In fact it's illegal to not file tax
17 returns for five years; isn't that correct?
18 A. I'm not a criminal lawyer but I think
19 that's true.
20 Q. And based on your experience it's
21 illegal in the state law to not file tax returns;
22 isn't that correct?

1        A.   I think that's partially true but I'm

2   not a criminal lawyer.

3        Q.   But yet your opinion is they're

4   consistent with what other small businesses do,

5   they being Trident, by not filing tax returns?

6        A.   It happens and they file the returns

7   late and sometimes they don't file until somebody

8   points out an issue, then they go back and they

9   back file or they amend.

10       Q.   But you would never advise your

11  clients to not file tax returns for five years;

12  isn't that correct?

13       A.   I would not advise them to do that.

14       Q.   And you are aware of whether in fact

15  Trident faced dissolution in the state of North

16  Carolina?

17       MR. BRIGGS:  Objection.  Asked and

18  answered.

19       A.   Well, as I said there's a document in

20  the list that I have given you attached to my

21  report where the Secretary of State sent a notice

22  that as I recall it said that they had not filed

1    and you have never looked at the North Carolina

2    law; is that correct?

3        A.   I'm giving -- no, that's not correct.

4    I'm expressing an opinion about the practices of

5    small, closely-held corporations on these range of

6    corporate actions. I'm not expressing an opinion

7    about what the law is.

8        Q.   But your opining about the corporate

9    actions for a North Carolina corporation and

10   you've never looked at the North Carolina law;

11   isn't that right?

12       A.   I'm not a North Carolina lawyer and I

13   haven't looked at North Carolina law on this.

14       Q.   And you're certainly not an expert on

15   North Carolina law; isn't that correct?

16       A.   That's absolutely correct.

17       Q.   Have you ever represented a North

18   Carolina corporation before?

19       A.   Over 30 years it's possible but I

20   can't tell you the specific one.

21       Q.   Have you ever waived into North

22   Carolina bar as pro hoc or?

1  I think the things that we've been talking about

2  and are listed in my report are all the subjects

3  that one would look to in a case where piercing

4  the corporate veil is at issue.

5      BY MR. JACOBOVITZ:

6      Q.  You're not opining on whether

7  Airtronic should be allowed to pierce the

8  corporate veil here, are you?

9      A.  I'm not.

10      Q.  You're aware that Mr. Hillenburg

11  testified that he did not notice shareholders

12  meetings every time in writing; is that correct?

13      MR. BRIGGS:  Objection.  Asked and

14  answered.  Go ahead and respond again.

15      A.  The reason I'm hesitating is I believe

16  from the records that I saw that he did not and

17  what I can't remember is whether he also testified

18  to that.  But would not surprise me because I saw

19  no evidence of it.

20      MR. JACOBOVITZ:  Can we mark this as

21  Exhibit 12.

22      (Deposition Exhibit No. 12 was marked for