**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **TRIDENT ENTERPRISES, LTD., et al.** ) | |
| ) | |
| **Plaintiff/Counter-** ) | |
| **Defendant** ) | |
| ) | |
| **v.** ) | **Civil Action No.  1:09-cv-1355** |
| ) | |
| **AIRTRONIC USA, INC.** ) | |
| ) | |
| **Defendant/Counter-** ) | |
| **Plaintiff** | |

<u>**DEFENDANT'S REPLY TO PLAINTIFF AND COUNTER-DEFENDANTS'**</u>
<u>**OPPOSITION TO AIRTRONIC'S MOTION FOR SUMMARY JUDGMENT**</u>

Comes now, Defendant, Counter-Claimant, Airtronic USA, Inc. ("Airtronic"), by and through its undersigned counsel, and replies to the Plaintiff and Counterclaim Defendants' Opposition to its Motion for Summary Judgment.  For the reasons stated in its Motion and those below, the Motion for Summary Judgment should be granted.  In reply Airtronic states the following:

**I.**      <u>**Introduction**</u>

Airtronic hereby files this brief Reply to respond to some of the arguments raised in the Opposition by the Plaintiff and the individual Counterclaim Defendants. The Reply hereby incorporates all arguments made by Airtronic in its initial motion.

Trident Enterprises, Ltd. ("Trident") and the individual Counterclaim Defendants initially state that the "facts of this case are not complicated".   Airtronic agrees with that statement but it does not agree with Trident's position on the facts presented.  Opposition, 1. Further, for a 'simple' matter, Trident has relied on yet another declaration which alleges the facts differently than they had previously been presented.  Many of these facts

are newly asserted and attempt to create disputes over material facts, when no such disputes exist.

## II.  Airtronic is Entitled to Summary Judgment in Its Favor Regarding Trident's Breach of Contract Claims and Airtronic's Breach of Contract Claims.

Airtronic has argued that it should prevail on Trident's breach of contract claim because Trident first breached the contract and, in addition, cannot enforce the contract because its fraudulent acts, e.g. understating the problems associated with the gun, entail unclean hands.  The facts demonstrate that 1) the prototype provided did not fully function; 2) the parts provided did not meet any useful purpose for performance of the contract; and 3) the drawings which would permit one knowledgeable in the art to make the device were not provided.  In short, the facts show that Trident and the individual Counterclaim Defendants breached the contract by not providing the items promised.

There is no question that the prototype did not work.  The gun either belonged to Brian Fauci, personally, or was somehow on loan to Trident (although there has been no evidence presented that a proper transfer per the appropriate regulations occurred, nor has Mr. Fauci testified that it was Trident's gun).  Regardless of this, the fact remains that the gun did not function.

Mr. Walter testified about the problems that prevented the prototype from working (the magazine would not feed, preventing the gun from loading after a shot is fired). Dep. of R. Walter, 45:15-46:5. (Exhibit 1).  He stated that Airtronic never received a working prototype. ("Q: You never got a working grenade launcher? A: Correct."  Dep. of R. Walter, 46:11-13. (Exhibit 1)  Fauci stated this directly in deposition:

> MR. JACOBOVITZ: Did that grenade launcher [that was conveyed to Airtronic in August 2007] work perfectly?

FAUCI: Perfectly, no.

Q: What were the problems?

A: It had a lot of inherent problems that were wrong from the initial conception when it was designed in '62.

Q: What problems?

A: It had a lot of cocking problems.  It had a lot of chambering problems.  It had a lot of ejection problems.  Off the top of my head.  There's a few more.

Dep. of B. Fauci, June 4, 2010, 35:15-36:4 (Exhibit 2).

In order to produce the launchers and market them, Airtronic required sample parts and a set of sufficient technical drawings.  Neither were provided in flagrant breach of the contract.  As discussed in Airtronic's Motion, the parts provided were received but did not fulfill their purpose under the contract.  The parts would not assemble and they did not match the technical data provided. Dep. of R. Walter, Ex. 1, 52:21-53:4.

The drawings (also referred to as the Technical Data Package, or "TDP") were also insufficient.  The fact remains that Trident and the individual Counterclaim Defendants were obligated to provide "drawings sufficient to enable one typically knowledgeable in the art to make the parts and assemble the device."  License Agreement, ¶ 4(iii-v).  These drawings were never provided.  Fauci testified:

MR. JACOBOVITZ: "Drawings sufficient to enable one typically knowledgeable in the art to make parts and assemble the device.  Were those drawings conveyed to Airtronic?

Mr. FAUCI: No, they weren't.

Dep. of B. Fauci, Ex. 2, 29:6-10.

In their opposition, Trident and the individual Counterclaim Defendants attempt to argue that Mr. Walter waived these requirements.  Opposition at 6; 13-14. Trident has not presented any emails from Mr. Walter to reflect a confirmation by Mr. Walter that he had waived this requirement.

Mr. Hillenburg declared that a meeting between him, Brian Fauci, Robert Walter, and John Sullivan (described as a "quality control employee of Airtronic") occurred about a week after the contract was signed in 2007.  Opposition, Ex. 3 ¶ 8.  Mr. Hillenburg states that during this meeting Mr. Walter indicated that "they did not need the detailed drawings" and that the CAD ("computer assisted drawing") models would be "sufficient."  *Id.*, ¶ 9.  These assertions are false and should not cast doubt as to whether adequate drawings were provided under the contract.  As shown in the attached declaration of John Sullivan such a meeting did not occur, and the waivers attributed to Robert Walter were not given.  Exhibit 3.

Mr. Sullivan, a full-time police officer for nearly twenty-two years, explains in his declaration that he has done some delivery and "testing by firing" for Airtronic as an independent consultant.  Exhibit 3, ¶¶ 1-4.  He states he was never employed by Airtronic as a quality control employee. *Id.*, ¶ 5.  He flatly states that he was not involved in a meeting concerning the manufacture of the grenade launcher.  *Id.*, ¶¶10-12.  The assertions of Mr. Hillenburg are self-serving.

Trident and the individual Counterclaim Defendants argue that the contract was orally modified and/or that Airtronic waived its rights under the contract.  These assertions are predicated on the misstatement above, that the receipt of the prototype and existing drawings would be sufficient.  Opposition, 12.  While Airtronic refutes that such

a modification ever occurred, because the contract requires performance over more than a year, Virginia's statute of frauds requires written evidence of modification in order to be enforced as a contract.  Va. Code §11-2(8).  Such modifications when the original agreement is subject to the statute of frauds will likewise require written evidence to be enforceable.  *Moyer v. Ellis*, 167 Va. 213, 217-218; 188 S.E. 151 (Va. 1936), accord.  *Paul Bruce Inc. v. Gemini Asset Managers*, 35 Va. Cir. 372, *3 (1995).  "To allow such substitution of the verbal agreement for the written contract would defeat the very purpose of the statute."  *Id.*, 218.  As the waiver alleged by Trident and the individual Counterclaim Defendants is not demonstrated clearly or convincingly, it cannot be accepted that Airtronic knowingly relinquished any of its rights under the contract by oral modification.

These breaches of the contract damaged Airtronic, and entitle it to summary relief on its counterclaimed breach of contract.  Likewise, because these material breaches frustrated the entire purpose of the contract (to manufacture and sell functioning grenade launchers), Trident is prevented from now enforcing the contract.  Airtronic is similarly entitled to summary judgment in its favor regarding Trident's initial claim.

III.     **Airtronic is Entitled to Summary Judgment for Its Claims of Fraud and Constructive Fraud.**

Airtronic has alleged that it was induced to enter into the licensing agreement with Trident (and thereby with the individual Counterclaim Defendants) based on fraud relating to Trident's ability to perform and its legal status regarding the manufacture or sale of firearms.  There are no disputes concerning material facts that prevent a finding in Airtronic's favor regarding either of these misrepresentations.

The facts relating to the breach of contract demonstrate clearly that neither Trident nor any of the individual Counterclaim Defendants possessed the items necessary to fulfill their end of the bargain.  There was no working grenade launcher that could have been provided under the contract, regardless of whether Trident or Brian Fauci owned it.  The "drawings sufficient to enable one typically knowledgeable in the art to make parts and assemble the device" were neither available nor provided.  These are all critical items under the agreement, and the misrepresentation that they could be produced in fulfillment of the contractual obligations induced Airtronic to enter the contract. These representations were made both before the contract was entered into and afterwards.

Likewise, there is no question concerning licensing requirements, as the regulations are clear.  Trident held itself out as a dealer of firearms, and as such, was required to have been licensed by the Bureau of Alcohol, Tobacco, and Firearms ("ATF") and registered compliant with International Traffic in Arms Regulation ("ITAR") with the Department of State.  The Gun Control Act ("GCA") and the ATF regulations make it clear that if someone is selling firearms, or repairing or modifying firearms, that person is a "dealer."  18 U.S.C. § 921(a)(2)(A).   The GCA prohibits persons from dealing in firearms without a license.  18 U.S.C. §923(a).

Trident argues incorrectly that it is not subject to these laws and regulations. Trident now relies on a new declaration of Mr. Walfred Nelson, and the statements of Mr. Hillenburg.  Opposition,15-16.  Mr. Nelson's new declaration does not address this question, but concludes that Trident did not require licensing based solely on the activities contained in the contract.  Opposition, Ex. 4 ¶ 6.  Nelson makes this allegation despite the fact that Trident took numerous deposits of $500 to sell at least twenty guns to

individuals.[1]  Dep. of M. Mendenhall, June 4, 2010, 68:12-16 (Exhibit 4); *see also* Dep. of S. Hillenburg, Aug. 18, 2010, 19:20- 21:4 (Exhibit 5).  Trident further maintains that because Mr. Hillenburg believed that Trident was not a manufacturer it had no duty to pursue licensing.  Opposition, 16.

The fact that Trident and the individual Counterclaim Defendants sought and accepted deposits on the sale of grenade launchers clearly shows a company and individuals engaged in the sale of firearms.  This unquestionably requires registration under the cited laws and regulations.  It was reasonable for Airtronic to infer from their prior dealings that Trident was licensed to deal in firearms and to rely on that inference. That neither Trident nor any of the individual Counterclaim Defendants ever sought to correct this misapprehension should be treated as a fraud by concealment.  See *Noell Crane Systems GmbH v. Noell Crane and Service, Inc.*, 677 F.Supp.2d 852, 871 (E.D.Va. 2009).  The fraud helped induce Airtronic to enter the agreement; it is a material misrepresentation.

Trident and the individual Counterclaim Defendants fraudulently induced Airtronic to enter the licensing agreement by misrepresenting their ability to perform and status under Federal licensing laws and regulations. Airtronic suffered damages as a result, and it is entitled to relief on this counterclaim.  There are no issues of material fact in dispute that would prevent a summary finding for Airtronic regarding its counterclaims for fraud and constructive fraud.

---

[1] Airtronic did not sell the grenade launchers to individuals.

**IV.     Airtronic is Entitled To Summary Judgment Concerning Trident's Claims of Conversion and Tortious Interference with a Business Expectancy.**

No issues of material fact remain in question which would entitle Trident to prevail on its claims of conversion or tortious interference with a business expectancy. Trident relies on the expert report of Mr. Nelson to conclude that a jury should decide whether or not Airtronic converted Trident's property.  Mr. Nelson's report concludes that there were other possible methods of dealing with the launchers, however it never states that the cutting of the launcher and parts was improper.  Mr. Nelson states alternatives which would impose additional paperwork, registrations, taxes, or obligation on third parties.  As explained in the underlying Motion, Airtronic complied with the laws and regulations regarding the transfer of destructive devices, did not act improperly and, in fact, contacted ATF about the guns.  Motion for Summary Judgment, 13-17.

Airtronic's actions cannot form the basis for Trident's claim of tortious inference with a business expectancy.  The law requires a party claiming interference to prove: 1) that there was a business expectancy with a "reasonable probability" of future economic gain from that expectancy; 2) the defendant knew of that expectancy; 3) that the defendant acted improperly in order to disrupt that expectancy; and 4) that it was "reasonably certain" that the business relationship would have continued absent the defendant's alleged actions causing damages to the claimant. *Virginia Model Jury Instructions – Civil Instruction No.* 40.200; *see also Chaves. v. Johnson*, 230 Va. 112, 120, 335 S.E. 2d 97 (Va. 1985), accord. *Skillstorm, Inc. v. Electronic Data Systems, LLC*, 666 F.Supp.2d 610, 616 (E.D.Va. 2009).  The undisputed facts demonstrate that Trident

cannot prove the elements of its case, and therefore Airtronic is entitled to summary judgment on that claim.

Trident did not present any evidence that there was a business expectancy or a "reasonable probability" of economic gain from that prospective relationship. This alone should defeat the claim. Nor have they put forward any evidence via Declaration from Richard Soldberg of MILKOR that the interference intruded upon the business relationship. However, as testified to and described, Airtronic did not have knowledge of this business expectation until after the instant lawsuit was filed. Motion for Summary Judgment, 21-22. There are no material facts in dispute indicating that Airtronic acted improperly or with the intent to disrupt a business expectancy. Finally, there is no evidence, let alone anything reasonably certain, that indicates Trident's business with MILKOR or any other firm would have continued absent Airtronic's conduct.

No material facts are in dispute which would allow Trident to prevail on its claims for conversion or tortious interference with a business expectancy. Since Trident has not demonstrated that Airtronic's actions were improper or were wrongfully exerted over Trident's property, nor that a valid business expectancy of which Airtronic had knowledge and intentionally disrupted existed, it cannot prevail on these claims. For these reasons, summary judgment should be entered in Airtronic's favor regarding Trident's claims of conversion and tortious interference with a business expectancy.

### V.   Conclusion

There are no facts in material dispute which would prevent findings for Airtronic on all matters before the Court. Concerning the breach of contract claims and counterclaims, the facts clearly show that Trident and the individual Counterclaim

Defendants did not meet their contractual obligation.  These breaches were material to the contract's ultimate purpose, which was entered into due to the misrepresentations that Trident and the individual Counterclaim Defendants could meet their obligations and were licensed to engage in the business of dealing firearms.  This fraudulent conduct injured Airtronic and entitles it to relief for those counterclaims.  Finally, the undisputed facts do not support a finding in Trident's favor regarding its claims of conversion and tortious interference with a business expectancy.  Rather, because the facts cannot prove the elements of those claims for Trident, Airtronic is entitled to summary judgment concerning them and is also entitled to summary judgment on its claims.

Dated : September 8, 2010                    Respectfully submitted,

                                             McCarthy Sweeney & Harkaway, P.C.


                                             /s/ Gabriel D. Soll
                                             Gabriel D. Soll (VSB No. 66734)
                                             Jeffrey S. Jacobovitz (admitted *pro hac vice*)
                                             Attorneys for Airtronic USA, Inc.
                                             1825 K Street, N.W., Suite 700
                                             Washington, D.C. 20006
                                             (202)775-5560 (tel)
                                             (202) 775-5574 (fax)
                                             gsoll@mshpc.com

**<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that on this 8th day of September, 2010, a copy of the foregoing Reply to Plaintiff and Counterclaim Defendants' Opposition  to Defendant's Motion for Summary Judgment was filed electronically through the Court's CM/ECF system, which notifies those noted below of its service. A courtesy copy has also been sent via first class mail to:

Alan Briggs, Esq. (abriggs@ssd.com)
Rebecca Worthington, Esq. (rworthington@ssd.com)
Squire, Sanders & Dempsey, L.L.P.
1201 Pennsylvania Ave., N.W.
Suite 500
Washington, D.C. 20004

Counsel to Trident Enterprises, Ltd.


         /s/ Gabriel D. Soll
         Gabriel D. Soll, Esq.